No. 112.

## The Tennessee Coal, Iron and Railroad Company
### *v.* Sargent et al.

Fraud.—*Sale of Personal Property.—Vendor's Right of Replevin.—Fraudulent Intent.—How Established.*—The vendor of personal property obtained from him by the fraud of the purchaser may bring replevin for the same against such fraudulent purchaser, unless the rights of innocent parties have intervened.  The fraudulent intent of the vendee may be proved as fraud is established in other cases, and may be inferred from the circumstances surrounding the transaction.

Same—*Concealment of Insolvency by Vendee.—Disaffirmance of Contract.—Replevin.*—A purchaser of goods who knows himself to be insolvent, and fails to disclose such insolvency when buying such goods on a credit,

not intending to pay for them, perpetrates upon the vendor such a fraud as will entitle the latter to disaffirm the contract, and sue for the possession of the goods from the vendee. For a discussion of the evidence justifying the plaintiffs' right to maintain an action of replevin, see opinion.

EVIDENCE.—*Demurrer to.—What it Admits.*—A demurrer to the evidence admits all the facts which the evidence tends to prove, and all reasonable inferences that can be drawn therefrom.

From the Dearborn Circuit Court.

*N. S. Givan,* for appellant.

*G. E. Downey, H. D. McMullen, W. R. Johnston* and *H. R. McMullen,* for appellees.

REINHARD, J.—The "Aurora Iron Company" was a firm composed of Julius Severin, Emil Severin, C. Julius Severin and Eugene Severin, partners engaged in the manufacture of sheet iron at Aurora, Dearborn county, Indiana.

The appellant charges that on the 26th day of June, 1888, the said Aurora Iron Company purchased of different parties about six hundred tons of pig iron, a portion of which belonged to the appellant; that the iron was delivered at different times and in different quantities between June 26th and July 27th to said Aurora Iron Company, when, on the 28th day of July, 1888, the said company made an assignment to the appellees in this action for the benefit of its creditors.

The appellant further charges that the iron was procured from it by fraud, at a time when said iron company was hopelessly insolvent, and without any intention on the part of the members of said company of ever paying for the same.

As soon as the appellant's servants and agents ascertained that the assignment had been made, and after making a demand for the same and meeting with a refusal, it instituted this action in replevin for that portion of iron purchased by said company of the appellant.

Issues having been joined, the cause was submitted for

trial to a jury. When the appellant had introduced all its evidence, the appellees demurred to the evidence, and the jury were discharged. Subsequently the court sustained the demurrer, and the appellant, having properly saved its exceptions, brings the case here by appeal.

The sustaining of the demurrer to the evidence is the only error assigned in this court.

It is well settled that the vendor of personal property obtained from him by the fraud of the purchaser may bring replevin for the same against such fraudulent purchaser, unless the rights of innocent parties have intervened; and a purchaser of goods who knows himself to be insolvent, and fails to disclose such insolvency when buying such goods on a credit, not intending to pay for them, perpetrates upon the vendor such a fraud as will entitle the latter to disaffirm the contract, and sue for the possession of the goods. *Brower* **v.** *Goodyer*, 88 Ind. 572, and authorities cited.

In order to maintain the action it was sufficient for appellant to prove that the Aurora Iron Company, at the time it purchased the goods of appellant, was insolvent; that the members of the firm knew this fact, but concealed it from the appellant when the goods were purchased, and that at the time of such purchase they did not intend to pay for them.

The evidence tends to prove that the liabilities of the iron company, at the time of the assignment, which was but a few days after the purchase, were in the neighborhood of $79,000, while the assets, according to the schedule filed with the assignees, were only $31,874.88, and much of the property going to make up the assets was encumbered by mortgage.

From these facts the jury clearly had the right to draw the inference that the members of the firm of the Aurora Iron Company must have had some knowledge of this vast indebtedness at the time of the purchase. They were not bound to draw such inference, but when the court said in ef-

fect that they could not, it invaded the jury's prerogatives, and fell into an error.

The evidence also tends to prove that Emil Severin, one of the firm, when asked by Herron, the salesman who sold them the appellant's goods, how they were doing in business and what were their prospects, answered that they were getting along nicely ; that they had orders from St. Louis and other places, and were doing well; and that they made no disclosure of their insolvency, but concealed it. The language used by the said parties was such as may well be calculated to create an impression that they were making a success in their business.

From these facts the jury had the right to draw the further inference that the said iron company never intended to pay for the goods which they purchased under these circumstances.

Such fraudulent intent is proved as fraud is established in other cases. It is nearly always inferred from the circumstances surrounding the transaction under which it is charged to have been perpetrated.

The appellees have not favored us with a brief, but we are informed by counsel for appellant that the court based its ruling, in sustaining the demurrer, upon the fact " that the evidence did not show that the appellant sold the iron in controversy to the Aurora Iron Company, or that it was the iron of the appellant " that was sued for in this action.

In this view of the evidence the court—if it entertained such view—must certainly have been mistaken.

William H. Herron, a witness on behalf of the appellant, testified as follows :

" I sold them three hundred tons South Pittsburgh mottled iron and three hundred tons of white iron.

" Q. Is that the iron in controversy in this action ?

"A. Yes, sir; a part of it."

C. Emil Severin, one of the partners of the Aurora Iron

Company, was examined as a witness by the appellant, and testified as follows :

" Q. Do you recollect receiving the iron in controversy ?

"A. Whenever any iron was received it was always reported to me. I do not recollect this iron in particular.

"Q. Would you be able to refresh your memory from your books ?

"A. I do not know whether I would be or not. We received bills dated on the 3d, 5th, 7th, 13th and 14th.

" Q. That is you had iron delivered on those days ?

"A. it was dated that way. We generally received it a few days later.

" Q. From whom did you receive that ?

"A. It was from the Tennessee Coal, Iron and Railway Company."

Mr. Herron also further testified as follows :

" Q. Tell us about this iron ; what did you say about this iron you had sold them ?

"A. Mr. Stedman said that there was some iron that had just arrived and had been put in Thursday or Friday ; I think he said the 27th, and that when Mr. Severin had told him that he was going to make this mortgage, Mr. Stedman asked about this iron on track, and Mr. Severin said he would have that hauled in immediately and unloaded."

Also :

" Q. What then did you do?

"A. That was on the 3d of August. The next day—I am not sure what day it was—May I refer to my memorandum?

" Q. Yes.

" Well, I got out replevin papers.

" Q. What did you take under them ; do you know ?

"A. The iron ; I don't know what day that was, whether it was the 4th or 6th."

This testimony was undoubtedly sufficient to authorize the jury to find that the property replevied had been sufficiently identified.

By the demurrer to the evidence the case was taken from the hands of the jury and submitted to the court. The demurrer was an admission of all the facts which the evidence tended to prove, and all reasonable inferences that could be drawn therefrom. If from the evidence the jury might reasonably have drawn the inference by which they could sustain the action, the demurrer should have been overruled. *McLean* v. *Equitable, etc., Life Assurance Society,* 100 Ind. 127; *Willcuts* v. *Northwestern, etc., Ins. Co.,* 81 Ind. 300.

Applying these rules to the case before us, our conclusion is that the court erred in sustaining the demurrer to the evidence.

Judgment reversed, with orders to the court below to overrule the demurrer to the evidence, and to render judgment on the evidence in favor of the appellant for the goods replevied.

Filed June 24, 1891; petition for a rehearing overruled Sept. 19, 1891.