No. 1,391.

## The Cleveland, Cincinnati, Chicago and St. Louis Railway Company *v.* Adair.

RAILROAD.—*Permissive Use of Right of Way as a Way for Foot Passengers.—Invitation.*—Mere sufferance or permissive acquiescence in the use of the tracks and right of way as a way for foot passengers is not sufficient to constitute an invitation to one to enter upon such right of way and tracks.

SAME.—*Using Track as Foot Path.*—The acquiescence or permission of a railroad company in the use of its tracks as a foot path must be construed in the light of the continuous use thereof by the railroad company.

SAME.—*Trespasser or Licensee.—Duty to.—Railroad Track.—Negligence.*—A railroad company owes a trespasser or mere licensee no duty to protect him from its negligence.

SAME.—*Action by Parent for Death of Child.—Demurrer to Evidence.—No Duty Owing by Company Disclosed.*—In an action by the father for damages for the alleged negligent killing of his seven-year-old son by being run against by the tender of one of the defendant's engines, while the boy was walking along the track of the railroad company at a place where there was no highway or street, the evidence is demurrable where it does not disclose any duty owing by the company to protect the boy from the consequences of its negligence, the boy being a trespasser, or at most a mere licensee.

Opinion on petition for rehearing by DAVIS, J. Dissenting opinion by GAVIN, J., which is concurred in by LOTZ, J.

From the Marion Superior Court.

*B. K. Elliott, W. F. Elliott* and *J. T. Dye*, for appellant.

*W. J. Beckett* and *W. S. Doan*, for appellee.

DAVIS, J.—The appellee alleges, in his amended complaint, that the appellant "is and was, on the 11th day of January, 1892, a corporation duly organized under the laws of the State of Indiana, and that on said day defendant owned and was operating and controlling a railway in and through the city of Indianapolis; that

said railway extended in a northeasterly direction from Massachusetts avenue depot, in said city, to the town of Brightwood, in said county and State; that said defendant had and maintained, on said date, tracks between aforesaid points and that said tracks were used by foot passengers constantly and continuously in passing and repassing between said Massachusetts avenue depot and said town of Brightwood and intermediate points with the knowledge, consent, and permission of said defendant, and had been so used for a long time past, to wit, twenty years; that on the 11th day of January, 1892, said defendant was in control of and operating one of said defendant's locomotives and tenders, and was backing the same over and upon the north track of said railway in the direction of the said town of Brightwood; that on the aforesaid day, Clay Adair, aged seven years, son and servant of this plaintiff, came upon said tracks without fault or negligence or knowledge of this plaintiff, or said Clay's mother, and without fault or negligence on the part of said Clay himself (he being too young to have discretion), at a point where Orange avenue crosses said tracks, and was walking east on the north tracks of said road at the same time said defendant was backing her locomotive and tender in the same direction and on said north tracks of said road, and plaintiff says that on a track parallel with and near to, was a locomotive approaching said Clay from the opposite direction to that in which said Clay was going; that said last mentioned locomotive was coming at a high rate of speed, and had approached so near to said Clay that by reason of the noise thereof it was impossible for him to hear the first mentioned locomotive, which was approaching said Clay from behind, and plaintiff says at a point about 990 feet east of where said Clay came upon said tracks, and

within the said city of Indianapolis, and while in plain view of said defendant, defendant did so negligently manage said first mentioned locomotive and tender that without giving said Clay any warning of the approach of said locomotive and tender behind him, negligently run said tender against said Clay with great force and violence, knocking said Clay from said tracks and inflicting deep and severe injuries upon the body of said Clay, from which injuries he soon died, and without fault or negligence on the part of said Clay's parents, or either of them, or of said Clay himself; that at the time said tender and locomotive struck said Clay they were negligently running at a high and reckless rate of speed, to wit, at the rate of thirty (30) miles an hour; that said locomotive and tender were backing, and defendant negligently failed to have a watchman or other person on the rear end of said tender; that defendant negligently failed to ring the bell attached to said locomotive and negligently failed to give said Clay any signal of warning, all of which negligent acts were in violation of an ordinance of the city of Indianapolis." The ordinance of the city of Indianapolis is set forth and these allegations follow: "That the said locomotive was running at the time it struck said Clay in negligent and reckless disregard of said ordinance, which ordinance was well known to the defendants, and by reason of defendant's negligence, as aforesaid, the said injuries were inflicted on the body of said Clay; that said Clay was a child of bright mind and intelligence, and of strong, robust health and physical constitution; that by reason of the death of said child this plaintiff was deprived of the services of said child from the time of his death until when, if he had lived, he would have arrived at the age of twenty-one (21) years, which services, over and above the expenses

of the support and maintenance of the said Clay, would have been the sum of two thousand dollars ($2,000).''

The railroad between the points mentioned in the complaint and evidence was not on or along a highway, street or alley.

It appears from the evidence that appellant owned and operated the railway tracks on which appellee's son was walking at the time he was struck by the tender attached to or forming a part of the locomotive of appellant. There were three tracks upon appellant's right of way. At the point where the engine ran upon the boy the tracks ran on and along an embankment two or three feet high. The tracks between Orange avenue and Rural street are within the corporate limits of the city of Indianapolis. The boy entered on the tracks of appellant at Orange avenue. There were cattle guards where he entered. The tracks are much used by appellant and trains are run over them every few minutes.

The tracks are part of the main line of appellant, and upon them are located the large shops of appellant at the town of Brightwood, two miles east of the city of Indianapolis. There were fences on both sides of the track between Orange avenue and Rural street, which fences were erected by appellant, but which in places were out of repair or had been torn down by persons living in the vicinity in order to enable them to enter upon the railroad tracks. From Orange avenue to the point where the boy was struck, which he had reached by walking east on appellant's track, was 990 feet. The first crossing east of Orange avenue, is Rural street, and the distance between Orange avenue and Rural street, is one mile. At the time the boy was struck one engine was moving west, and the engine which struck him was moving east. Permission had been given at least one person by defendant several years prior to the accident

MAY TERM, 1895.            573

Cleveland, Cincinnati, Chicago and St. Louis Railway Co. *v.* Adair.

to put up steps to the fence near this point so as to facilitate entering upon and crossing the tracks. Persons frequently walk across the tracks, and they also walk up and down the company's right of way, and had been accustomed to so use the tracks for many years. At the time of the accident the boy was seven years and ten months of age. He was a healthy boy of average intelligence. The appellant, at the time of the accident, was violating the ordinance in three particulars:

1. In failing to ring the bell.

2. Excess of speed.

3. In failing to have a watchman on the rear end of the tender "in order to avoid accident."

It is not charged in the complaint, unless it is by inference, that children were in the habit either of crossing or walking up and down the tracks. There was evidence tending to prove that the tracks were used as an ordinary street by footmen, and also by school children, at least in crossing the same, but whether children were accustomed to travel along the same at this point is not clear.

It is not claimed in this case that the servants of appellant saw the boy on the track in time to have prevented the injury. *Louisville, etc., R. R. Co.* v. *Lohges,* 6 Ind. App. 288.

Neither is there any claim that the injury was willfully inflicted. Therefore the principles enunciated in *Lafayette, etc., R. R. Co.* v. *Adams,* 26 Ind. 76, are not applicable.

We quote as follows from the case last cited: "It is well settled that where the negligence of the defendant is so gross as to imply a disregard of consequences, or a willingness to inflict the injury, the plaintiff may recover though he be a trespasser, or did not use ordinary care to avoid the injury. Recklessness in the manage-

ment of the train is such gross negligence as is utterly regardless of consequences.''

In this case the only charge of negligence is the violation of the ordinance in the particulars hereinbefore indicated.

In special term a demurrer was sustained to the evidence. On appeal to general term appellee assigned as error that the court erred in sustaining the demurrer of appellant to the evidence. The general term reversed the judgment rendered at special term. The errors assigned in this court are as follows:

''1. The general term of the Marion Superior Court. erred in reversing the judgment of the special term of the said Marion Superior Court.

''2. The plaintiff's complaint does not state facts sufficient to constitute a cause of action.''

The appellee's counsel say that ''the theory upon which the complaint proceeds is that Clay Adair was a. licensee upon the appellant's railroad and was killed through the fault of appellant, he and his parents being free from fault. Is the complaint sufficient on this. theory, the theory of negligence and not willfulness.''

'Adopting the construction given the complaint by appellee, counsel for appellant insist it is bad beyond the possibility of rescue. The contention of counsel for appellant is that the boy was a trespasser, but that if he was a licensee the complaint ''is bad, because whether the person on the track was a trespasser or a bare licensee there can be no recovery, although the appellant's servants may have been negligent.''

The gist of the argument of counsel for appellant on this proposition is as follows:

''There was nothing resembling an invitation.    *    *
Railway tracks between stations are private property upon which no person, young or old, can walk without

being held to be a trespasser. * * A plaintiff can not recover for injuries received on a railway track in a case where there is negligence on the part of the railway company's servants unless he affirmatively shows a right given by invitation to be on the track. Invitation is indispensable, otherwise the person on the track is a trespasser. If he has business with the company which requires him to go on the track, then he has a right to go there. If he has no business with the company, then he has no right on the track unless expressly or impliedly invited there by some person having a right to give the invitation."

In this case there was no inducement, allurement or enticement for the decedent or any one else to enter upon the tracks, except, such, if any, as may be inferred from the acts and conduct of the parties to which we have referred.

Counsel for appellee contend that not only a licensee but "even a trespasser may recover under certain conditions for an injury negligently inflicted." Also that the risk that a licensee assumes is the risk incident to the proper and lawful management and use of the property he is licensed to use, and that if the risk is increased by the licensor without notice to the licensee, and injury results thereby to the latter without his fault, the former is liable, and that the licensee in such case as this can not be held to have assumed the risk, unless it is held that he must assume that the railway company will violate the law.

The authorities are not in harmony on the questions presented for our consideration.

In this case appellant did not, on this occasion, use its property for a new or different purpose, or in any way change its character, except that in the usual and ordinary use of the property in moving trains, which was

always attended with more or less danger to trespassers or licensees, it failed and neglected to comply with the provisions of the ordinance in the respects hereinbefore stated.

In *Jeffersonville, etc., R. R. Co.* v. *Goldsmith*, 47 Ind. 43, the object of the action was to recover damages for a personal injury, which the appellee claimed he had sustained on the line of appellant's road, through the carelessness and negligence of appellant's servants and employes.

It was alleged, in the complaint, that for a long time the citizens of said town and vicinity, "with the knowledge and consent" of appellant, had used the main and side tracks of appellant's road as "foot path," etc.

The court said: "The track of a railroad belongs to the company, and is in no sense a public highway to those who are not being transported thereon. At public crossings, the public have the right to cross the track of a railroad, but in so doing all persons are required to exercise reasonable care and caution to avoid receiving injury, and the company is compelled to exercise the same degree of care and caution to prevent the infliction of injury. But between the stations and public crossings the track belongs exclusively to the company, and all persons who walk, ride, or drive thereon are trespassers, and if such persons walk, ride, or drive thereon at the sufferance or with the permission of the company, they do so subject to all the risks incident to so hazardous an undertaking."

In the case last cited, the court held that the appellee was guilty of negligence contributing to his injury, and, therefore, that he could not recover.

In *McClaren, Admr.*, v. *Indianapolis, etc., R. R. Co.*, 83 Ind. 319, the facts were substantially that the injured party was walking, in the town of Worthington, on a

switch of the defendant which had been used, not for the passage of through trains, but for switching off cars and trains after they had reached the depot; the people had been using said switch as a footway, without objection by the defendant. Under the direction of the court the jury found a verdict for the defendant.

We quote from the opinion of the Supreme Court, on appeal, the following: "The law is that between stations and public crossings a railroad track belongs exclusively to the railroad company, and that all persons who walk, ride or drive thereon, are trespassers, and if such persons do so at the sufferance or by the permission of the company, they do so subject to the risks incident to so hazardous an undertaking, and if injured by a train of the company there is no liability unless the injury was willful."

In this case the substance of the instruction of the court was that under the undisputed facts the decedent was guilty of negligence that contributed materially to his injury.

In *Terre Haute, etc., R. R. Co.* v. *Graham*, 95 Ind. 286, the court said: "In this case, the collision occurred between crossings, at a point where appellee had no right to be; he was upon the track as a trespasser, hence no kind of care on his part could make his presence there other than unlawful. In such case, the company is not liable on the ground of negligence in the running and management of its trains."

In the case last cited, that part of appellant's railroad between the depot at Greencastle and Greencastle junction had long been and then was used with the license and assent of appellant as a way for foot passengers to pass and repass on and along; that appellee was passing on and over that portion of the road on foot, as he had

been accustomed to do, and that appellant, well knowing the premises, negligently, etc.

In *Ivens* v. *Cincinnati, etc., R. W. Co.*, 103 Ind. 27, appellant was injured in crossing the railroad track. The railroad track was the most convenient way to the field, and had been adopted by appellant and others as a footway to the field. The company was guilty of negligence. The court said: "He was thus not only guilty of negligence, but he was a trespasser upon the company's property."

In *Cleveland, etc., R. W. Co.* v. *Stephenson*, 139 Ind. 641, the court says: "If the appellee, without notice to or the knowledge of the company, took possession of one of the cars, moved it to the chute and loaded it with hogs, he was, at best, a mere licensee if not a trespasser. In either case the company owed him no protection from its mere negligence." *Pennsylvania Co.* v. *Meyers, Admx.*, 136 Ind. 242.

We quote from the recent opinion of Judge Baker, in the United States Circuit Court of Appeals, in *Cleveland, etc., R. W. Co.* v. *Tort, Admr.*, as follows: "The decedent, accompanied by her son, was, when killed, walking on or dangerously near to the track of the company. He was not on or near any highway or street crossing. He was traveling along the right of way for his own convenience, without any invitation, express or implied, and with knowledge of the danger of life and limb from passing trains. * * * The only excuse offered for such conduct was that the defendant had suffered other people to travel along its right of way without interference or objection. He was traveling upon the defendant's right of way, not for any purpose of business connected with the railroad, but for his own convenience as a footway in reaching the village of Venice.

"The right of way was the exclusive property of the

defendant, upon which no unauthorized person had the right to be for any purpose. It was a place of known danger, and there was nothing to exempt the decedent from the character of a wrongdoer and trespasser in traveling along the right of way farther than the implied consent of the defendant arising from its failure to interfere with the previous like practice by others. But because the defendant did not enforce its rights and warn people off its premises, no right was thereby acquired to use its roadbed as a place for public travel. At most it was used by sufferance, which amounted to no more than a mere naked license, and imposed no obligation on the part of the owner to provide against the danger of the accident. The person who used the right of way for his convenience went there at his own risk and enjoyed the implied license with its attendant perils."

In another case the Supreme Court says: "The owner of premises is under no legal duty to keep them free from pitfalls or obstructions for the accommodation of persons who go upon or over them merely for their own convenience or pleasure, even where this is done with his permission. In such case the licensee goes there at his own risk, and as has often before been said, enjoys the license with its concomitant perils." *Evansville, etc., R. R. Co.* v. *Griffin*, 100 Ind. 221; *Faris* v. *Hoberg*, 134 Ind. 269.

In *Barry* v. *New York, etc., R. R. Co.*, 92 N. Y. 289, the action was brought to recover damages for alleged negligence causing the death of John J. Barry, a boy ten years of age, who was run over and killed in attempting to cross the railroad tracks.

It appeared that for more than thirty years the public were in the habit of crossing the tracks at this point to reach Madison and other streets, the proof being that several hundred people crossed there every day.

The court says: "There can be no doubt that the acquiescence of the defendant for so long a time, in the crossing of the tracks by pedestrians, amounted to a license and permission, by the defendant, to all persons to cross the tracks at this point. These circumstances imposed a duty upon the defendant in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right therein existed; but so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury.  *  *  In the case of the movement of a train of cars over a track at a place which the public are permitted to use as a crossing, the company are necessarily apprised that it is attended with danger to life. The company is an actor at the time in creating the circumstances which imperil human life, and it would be alarming doctrine that it was under no duty to exercise any care in the movement of its trains.  *  *  *  The ground of liability in this case is negligence, and the duty of the defendant to exercise reasonable care, existed irrespective of the fact whether the plaintiff's intestate had a fixed legal right to cross the track, or was there simply by the defendant's implied permission.  *  *   The circumstances known to the defendant required this, whether the plaintiff's intestate was there by right or by a mere license." *Harriman* v. *Railway Co.*, 45 Ohio St. 11; *Bellefontaine, etc., R. R. Co.* v. *Snyder*, 18 Ohio St. 399; *Davis* v. *Chicago, etc., R. W. Co.*, 58 Wis. 646; *Penso* v. *McCormick*, 125 Ind. 116.

In *Louisville, etc., R. W. Co.* v. *Phillips*, 112 Ind. 59, appellee was crossing the track of appellant on a street and caught his foot in the space between the guard rail and the rail of the track. The decision in that case is not in point here, but in the course of his opinion Judge ELLIOTT says: "Many of the cases go much further than the cases we have cited, for they hold that if the place has been used as a highway for a long period of time, and this use is with the knowledge and permission of the railroad company, it is its duty to treat it as a highway and to take precautions to prevent injury to those who travel over it. *Barry* v. *New York, etc., R. R. Co.*, 92 N. Y. 289; *Byrne* v. *New York, etc., R. R. Co.*, 104 N. Y. 362; *Harriman* v. *Pittsburgh, etc., R. R. Co.*, 9 Western Rep. 438; *Chicago, etc., R. R. Co.* v. *Hedges*, 105 Ind. 398; *Bellefontaine, etc., R. R. Co.* v. *Snyder*, 18 Ohio St. 399; *Graves* v. *Thomas*, 95 Ind. 361. The doctrine of these cases is in harmony with the rule that has long prevailed and has been again and again enforced, and that is, that where the railroad company licenses the public to make a general use of its track it can not treat a citizen who walks upon it as a trespasser. Of the great number of cases asserting this principle we cite only a few: *Davis* v. *Chicago, etc., R. W. Co.*, 58 Wis. 646; *Murphy* v. *Chicago, etc., R. R. Co.*, 38 Iowa, 539; *Bennett* v. *Railroad Co.*, 102 U. S. 577; *Kay* v. *Pennsylvania R. R. Co.*, 65 Pa. St. 269; *Campbell* v. *Boyd*, 88 N. C. 129 (43 Am. Rep. 740)."

In *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250, Judge ELLIOTT says: "Where a railroad company licenses the public to make use of its track in a city, town, or village, it can not treat one who avails himself of the license as a trespasser. But it is not enough that persons do occasionally use the track, for, to constitute a license, it must appear, either expressly or by clear im-

582    APPELLATE COURT OF INDIANA,

Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Adair.

plication, that the owner of the track authorized them to use it."

In *Carskaddon* v. *Mills*, 5 Ind. App. 22, the appellee, Anna Mills, was the owner of a lot across which ran a road leading from one street to another, and it was used by the traveling public generally for said purpose, and had been so used for several years, but the owner had never consented that any one might use the road, having never been asked for permission to do so.   In order to stop the travel over the lot, appellee stretched a strand of barbed wire across the rear end of the lot, about three feet above the ground and at right angles, or nearly so, with said road.   Without any notice of this fact appellant, after dark, attempted to drive across this lot in the road and injured his horse.

Judge REINHARD says:   "The first important inquiry that arises is as to the status occupied by appellant in relation to the appellee's ground at the time the former attempted to cross it on the night of January 1.   Was he a trespasser or a licensee? for we think it clearly appears from the evidence that he sustained one or the other of these positions to the property.   We think that the right the appellant had, if any, to the use of the appellee's property was the same as that which the public had. The latter had used this ground, as we have seen, without objection, for a number of years.   This did not amount to a dedication or give the public an easement, but did amount to a license.   A license may be created either by parol or by acquiescence in the use of the property for the purpose in question without objection."

We quote, in this connection, from the opinion of Judge Ross in *Morrow* v. *Sweeney*, 10 Ind. App. 626, as follows:   "In every case involving actionable negligence, there are necessarily three elements essential to its existence.   (1) The existence of a duty on the part of the de-

MAY TERM, 1895.        583

Cleveland, Cincinnati, Chicago and St. Louis Railway Co. *v.* Adair.

fendant to protect the plaintiff from the injury of which he complains. (2) A failure by the defendant to perform that duty; and (3) An injury to the plaintiff from such failure of the defendant. When these elements are brought together they unitedly constitute actionable negligence. The absence of any one of these elements renders a complaint bad or the evidence insufficient. *Faris* v. *Hoberg*, 134 Ind. 269. In *Thiele* v. *McManus*, 3 Ind. App. 132, this court said: 'A complaint for personal injury through negligence must show a legal duty or obligation of the defendant toward the person injured, existing at the time and place of the injury, which the defendant failed to perform or fulfill, and that the injury was occasioned by such failure.' The law accords to every person the right to the free use of his own property, subject only to the limitation that he so use it that he inflict no injury upon others. In such use he is not bound to anticipate that others will go upon his property or put themselves in the way of his rightful use thereof, but he has a right to assume that his right to the use and possession is exclusive, except he has granted rights or privileges with reference thereto to others, in which event he is bound to so use it as not to interfere with their rights. 'There is an elementary and fundamental principle of law, which is based upon, and coeval with the right to own and control property, that a man must so use his own rights and property as to do no injury to those of his neighbor.' *Gagg* v. *Vetter*, 41 Ind. 228. There is a duty, therefore, resting upon all persons to so use their property that in such use they may not injure others in the exercise of their rights. The duty thus imposed extends only to the extent of recognizing and observing such rights. If no rights exist there is no duty imposed. In the case under consideration the question arises: what rights had appellee or the general

public to pass over and across appellant's property? If no right of passage existed, and appellant had a right to inclose his property with a barbed wire fence, the complaint does not state a cause of action. It is not contended that a highway had been established across appellant's lot by user. If appellee's wife attempted to drive upon appellant's lot, it was not because she was exercising the right of the general public to use a public highway. It must be inferred, therefore, that she was a trespasser, unless the facts alleged show that she was a licensee. * * * The questions here discussed arose in the case of *Carskaddon* v. *Mills*, 5 Ind. App. 22, and were fully and ably discussed there, and we adhere to the principles there announced.''

In this connection we quote from a recent opinion of this court: ''In actions for injuries sustained by a child, the question as to the negligence of the defendant, ordinarily, stands on the same footing as in case of an adult person, except when a child is seen by the defendant in time to avoid the injury, or when the liability of children to exposure is known by the defendant prior to the injury, then a higher degree of care is exacted of the defendant, under some circumstances, to avoid the injury.'' *Louisville, etc., R. W. Co.* v. *Sears*, 11 Ind. App. 654; *Louisville, etc., R. R. Co.* v. *Lohges, supra.*

In the case last cited the court says ''that as to children of tender years the company may be held liable not only where they fail to use proper care after the child is discovered, but also where they might, by the use of reasonable diligence, have discovered the child and have avoided any injury to it,'' as asserted by some authorities.

In a recent Missouri case the court says: ''But because of the known propensity of children and even adults to take the chances of walking on those tracks in

Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Adair.

populous cities or districts, the rule has long been settled in this State, that when there is reason to apprehend that the track may not be clear, notwithstanding the right of the company to have it clear, the persons operating a train can not act on the presumption that the track is clear without being responsible for the consequences." *Fidler* v. *St. Louis, etc., R. Co.*, 107 Mo. 645.

In this connection we quote from the opinion of Judge NIBLACK in *Indiana, etc., R. W. Co.* v. *Barnhart*, 115 Ind. 399, as follows: "Where a person has a license to go upon the grounds or the enclosure of another, he takes the premises as he finds them, and accepts whatever perils he incurs in the use of such license. But when the owner or occupant, by enticement, allurement or inducement, whether express or implied, causes another to come upon his lands, he then assumes the obligation of providing for the safety and protection of the person so coming, and for any breach of duty in that respect such owner or occupant becomes liable for any injury which may result to the person so caused to come onto his lands. The enticement, allurement or inducement, as the case may be, must be the equivalent of an express or implied invitation. Mere acquiescence in the use of one's lands by another is not sufficient. Such an implied invitation may be inferred from some act or line of conduct, or from some designation or dedication."

The first question to be determined is whether, under the facts and circumstances alleged in the complaint, in the light of the authorities, the appellant owed to the boy a duty to protect him from the dangers growing out of the acts of negligence on the part of appellant charged in the complaint as the proximate cause of his injury.

The basis of the right of recovery is a breach of duty, and it is absolutely impossible that a right of action can

exist where there is no duty. It is an elementary principle, deeply and firmly rooted, that where there is no duty there can be no actionable negligence. It is absolutely inconceivable that there can be actionable negligence where there is no duty, since negligence without breach of duty can not possibly exist. Dr. Wharton says: "Negligence, in its civil relations, is such an inadvertent imperfection, by a responsible human agent, in the discharge of a legal duty, as immediately produces, in an ordinary and legal sequence, a damage to another." Wharton Neg., section 3. This learned author analyzes negligence into its constituent elements and as one of these elements gives this: "III. A duty which is thus imperfectly discharged." *Ibid.* Another text-book gives this analysis: "(1) Whether a particular act has been performed, and (2), whether the performance or omission of this act was a breach of a legal duty." Shearman & Redf. Neg., section 11. A contributor to a very valuable work thus states the law: "There can be no case of the negligent injury of one person by another in the absence of a legal duty due from the person inflicting the injury to the person on whom it is inflicted." 16 Am. and Eng. Encyc. Law, 415. Many authorities are cited in support of this statement. Judge Cooley says: "The first requisite in establishing negligence is to show the existence of the duty which it is supposed has not been performed." Cooley Torts, 659.

The nature and practical application of the elementary doctrine to which we have referred is shown in the case of *Sweeny* v. *Old Colony, etc., R. R. Co.*, 10 Allen, 368, 87 Am. Dec. 644.

In that case the plaintiff was injured while crossing the track of the defendant by license, and it was held that there could be no recovery. In the well-reasoned

opinion delivered in that case it was said: "In order to maintain an action for an injury to person or property by reason of negligence or want of due care, there must be shown to exist some obligation or duty towards the plaintiff, which the defendant has left undischarged or unfulfilled. This is the basis on which the cause of action rests. There can be no fault, or negligence, or breach of duty, where there is no act, or service, or contract which a party is bound to perform or fulfill. All the cases in the books, in which a party is sought to be charged on the ground that he has caused a way or other place to be encumbered or suffered it to be in a dangerous condition, whereby accident and injury have been occasioned to another, turn on the principle that negligence consists in doing or omitting to do an act by which a legal duty or obligation has been violated. Thus, a trespasser who comes on the land of another without right can not maintain an action, if he runs against a barrier or falls into an excavation there situated. The owner of the land is not bound to protect or provide safeguards for wrong-doers. So a licensee who enters on premises by permission only, without any enticement, allurement or inducement being held out to him by the owner or occupant, can not recover damages for injuries caused by obstructions or pitfalls. He goes there at his own risk, and enjoys the license subject to its concomitant perils. No duty is imposed by law on the owner or occupant to keep his premises in a suitable condition for those who come there solely for their own convenience or pleasure, and who are not either expressly invited * * or induced to come upon them by the purpose for which the premises are appropriated and occupied, or by some preparation or adaptation of the place for use by customers or passengers, which might naturally and reason-

ably lead them to suppose that they might properly and safely enter thereon."

In this case it appears that appellant built its tracks and roadbed in the usual way. The tracks were enclosed by fences on each side. There were cattle guards where he entered. At the point where the engine ran upon the decedent, the tracks ran along an embankment two or three feet high. Trains in great number were passing over the tracks of appellant each day. The mile of road on which appellant was walking extended from Orange avenue to Rural street, the east corporation line of the city, and between these two highways there was no crossing. There were cattle guards, tracks and fences warning the boy not to go on the right of way.

There is no fact averred in the complaint from which it can reasonably be inferred that appellant either expressly or by implication invited the boy to come upon the track. Neither is any such fact proven by the evidence. Mere sufference or permissive acquiescence in the use of the tracks and right of way, under the facts and circumstances of this case, is not sufficient to constitute an invitation. We can not imply an invitation to the boy to enter upon the tracks and right of way of appellant at the place where he entered and to travel longitudinally along the same in the manner he was doing when injured, and therefore the question is whether treating him as a mere licensee the company is chargeable with actionable negligence. Under the rule enunciated in *Barry* v. *New York, etc., R. R. Co., supra,* and in *Fidler* v. *St. Louis, etc., R. R. Co., supra,* appellant would be liable. Following our own cases, however, there is no liability unless it is on the ground that the appellant might, by the use of reasonable diligence, have discovered the boy and have avoided any injury to him. *Jeffersonville, etc., R. R. Co.* v. *Goldsmith, supra;*

*McClaren, Admr.*, v. *Indianapolis, etc., R. R. Co., supra; Terre Haute, etc., R. R. Co.* v. *Graham, supra; Ivens* v. *Cincinnati, etc., R. W. Co., supra; Cleveland, etc., R. W. Co.* v. *Stephenson, supra; Pennsylvania Co.* v. *Meyers, supra; Evansville, etc., R. R. Co.* v. *Griffin, supra; Faris* v. *Hoberg, supra.*

The following cases are all distinguishable from the one in review and are not in point: *Louisville, etc., R. W. Co.* v. *Phillips, supra; Palmer* v. *Chicago, etc., R. R. Co., supra; Carskaddon* v. *Mills, supra; Morrow* v. *Sweeney, supra; Indianapolis, etc., R. W. Co.* v. *Pitzer*, 109 Ind. 179; *Louisville, etc., R. R. Co.* v. *Lohges, supra; Citizens' Street R. R. Co., etc.,* v. *Stoddard*, 10 Ind. App. 278; *City of Indianapolis* v. *Emmelman*, 108 Ind. 530; *Penso* v. *McCormick, supra.*

It is not alleged in the complaint that appellant might, by the use of reasonable diligence, have discovered the boy and avoided the injury to him. Neither is it alleged that appellant knew that children were likely to expose themselves to danger by entering upon the tracks and right of way at this point; nor is there any direct averment that children were in the habit of walking on and along the tracks and right of way with the consent, knowledge, and permission of appellant.

If, however, it were conceded that the complaint was sufficient after verdict, when attacked for the first time in this court, the question remains whether there was, in the light of the principles hereinbefore enunciated, any error in the ruling of the trial court in sustaining the demurrer to the evidence.

In this connection we quote from *Palmer* v. *Chicago, etc., R. R. Co.*, 112 Ind. 250, as follows:

"First. The court is bound to accept as true all the facts which the evidence tends to prove, and, as against

590    APPELLATE COURT OF INDIANA,

Cleveland, Cincinnati, Chicago and St. Louis Railway Co. v. Adair.

the party demurring, to draw from the evidence all such reasonable inferences as a jury might draw.    *    *    *

"Second. If there is a conflict in the evidence, then only such evidence as is favorable to the party against whom the demurrer is directed can be considered, and that which is favorable to the demurring party is deemed to be withdrawn."

In one of the leading cases upon the subject, *Bulkeley* v. *Butler*, 2 Barn. & C. 434, the court said: "What then is the office of a demurrer to the evidence?    It is this: If the party tender a bill of exceptions, the evidence must be left to the jury; but if the party does not wish that, he may withdraw it from their consideration by a demurrer.    If, however, he does not demur, he must not be placed in a better situation than if he did.    Now, by a demurrer to evidence, all the facts of which there is any evidence are admitted, and all conclusions which can fairly and logically be deduced from those facts."

The rule was thus stated by Chief Justice Marshall in *Pawling* v. *United States*, 4 Cranch, 219: "The party demurring admits the truth of the testimony to which he demurs, and also those conclusions of fact which a jury may fairly draw from that testimony.    Forced and violent inferences he does not admit; but the testimony is to be taken most strongly against him, and such conclusions as a jury might justifiably draw the court ought to draw."

Much to the same effect is the statement of the court in *Willcuts* v. *Northwestern, etc., Life Ins. Co.*, 81 Ind. 300 (303), that "a demurrer to the evidence admits all facts of which there is any evidence, and all inferences which can be logically and reasonably drawn from the evidence."

In a note to 2 Tidd's Pr. 865, the following statement is made: "The court will also, on the argument of the

demurrer, make every inference of fact in favor of the party which the jury might with the least degree of propriety have inferred; but they ought not to make forced inferences." *Tennessee Coal, Iron and R. R. Co.* v. *Sargent,* 2 Ind. App. 458.

Applying these rules, does the evidence considering only that which is favorable to appellee, and yielding to him the full benefit of all the reasonable inferences for which it supplies him a foundation, show that he was entitled to recover? On the question of contributory negligence it may be conceded that the parents were not in fault, and that the boy was bound to exercise only the degree of care which could be reasonably expected of one of his age.

Further, if there is room for difference of opinion, under the rules applicable in such cases, between reasonable men, as to the inferences which might be fairly drawn from the facts and circumstances disclosed by the evidence, the question as to whether the boy exercised ordinary care—such care and caution as are usually looked for in other children of like age and capacity with the decedent—was a question for the jury's determination, and if the jury might have drawn the inference that the boy was in the exercise of ordinary care, the demurrer should have been overruled on this question. *Louisville, etc., R. W. Co.* v. *Sears, supra,* and authorities there cited.

In *Cleveland, etc., R. W. Co.* v. *Tort, Admr.,* U. S. Cir. Ct. of App., the boy was eight years, seven months and six days old at the time he was killed. "He was a strong and healthy boy, and bright and intelligent for his age. * * * The decedent was old enough to be *prima facie* responsible for his trespasses, as well as chargeable with contributory negligence for a failure to exercise ordinary care, having regard to his age and in-

telligence, and the circumstances in which he was placed when killed."

In this case, the presence of the boy on the right of way was not caused by any wrong of appellant.

In *Indianapolis, etc., R. W. Co.* v. *Pitzer, supra,* the child, it is true, in the first instance, entered the train without right, but this act did not cause his injury. The conductor, in that case, expelled the child from the train miles from home, and this act, in connection with the wrong of the engineer of the other train in negligently failing to stop the train after he saw the child, when it was within his power to do so, before it was upon the child, unitedly constitute the basis of the reasoning in that decision.

The rule is well settled that every case is to be determined by its own circumstances, and that children are to be held responsible only for the discretion of children.

In this case the boy entered the tracks over cattle guards. The right of way was fenced on both sides. The tracks were elevated, and they were not in or along a street, alley or highway. Trains were frequently moving on the tracks in both directions. There was no evidence tending to show any invitation, allurement or enticement on the part of appellant to the boy to enter on the tracks or right of way at that point. It does not appear that the boy had previously walked thereon, or that he had any knowledge that the tracks or right of way were ever so used by others with or without the consent or permission of appellant. There is no explanation as to why the boy was there.

In view of the tender years of the boy, we would hesitate to charge him, as a matter of law, with contributory negligence.

The acquiescence or permission of appellant in the

use of the tracks as a foot path must be construed, under the circumstances, in the light of the continuous use thereof by appellant.

In any event, without further prolonging this opinion, which has reached an unreasonable length, suffice it to say that in our judgment, under the issues, in the light of the authorities cited, appellant was not guilty of actionable negligence and that there was no error in sustaining the demurrer to the evidence. There was no invitation, either express or implied, to the boy to enter and walk on and along the railroad tracks. The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it. *Bennett* v. *Railroad Co.*, 102 U. S. 577.

Judgment of general term of superior court reversed, with instructions to affirm judgment rendered at special term.

Filed Jan. 30, 1895.

## OPINION ON PETITION FOR REHEARING.

DAVIS, J.—Counsel for appellee have presented an earnest and able petition for a rehearing, which we have carefully considered. If, through misapprehension of the record, any statements in the original opinion relative to the cattle guard or fences are inaccurate, we were inadvertently, no doubt, misled by counsel, but however this may be, such inaccurate statements, if any, are not of a material character.

Conceding that the ordinance was in the nature of a police regulation and that its provisions applied to all points within the corporate limits, the result under the decisions in this State is the same. *Whitson* v. *City of*

*Franklin*, 34 Ind. 392; *Pennsylvania Co.* v. *Horton*, 132 Ind. 89.

It necessarily results then, under the circumstances of this case, that the failure to comply with the requirements of the ordinance, as alleged in the complaint, constitutes negligence and that such negligence was the proximate cause of the boy's death. *Chicago, etc., R. R. Co.* v. *Boggs*, 101 Ind. 522.

It may therefore be conceded that the boy was killed through the negligence of appellant, but the fact is he was on the track of appellant, not at a crossing nor in the street, as a mere volunteer or bare licensee without invitation of appellant either express or implied. *Cleveland, etc., R. Co.* v. *Martin*, 39 N. E. Rep. 759.

Under these circumstances the appellant owed him no duty to protect him from its mere negligence. *Cleveland, etc., R. W. Co.* v. *Stephenson*, 139 Ind. 641; *Faris* v. *Hoberg*, 134 Ind. 269.

It should be borne in mind, in this connection, that actionable negligence consists in the failure of the defendant to discharge some duty or obligation resting upon the defendant toward the plaintiff from which injury has resulted. *South Bend Iron Works* v. *Larger*, 11 Ind. App. 367.

It is true he may owe the duty to the plaintiff in connection with other persons. *Salem and Bedford Stone Co.* v. *O'Brien*, 12 Ind. App. 217.

As we have shown, in the original opinion, appellee could only recover, under the circumstances of this case, for the willful injury of the boy. *Pittsburgh, etc., R. W. Co.* v. *Redding*, 140 Ind. 101; *Parker, Admr.*, v. *Pennsylvania Co.*, 134 Ind. 673; *Sherfey* v. *Evansville, etc., R. R. Co.* 121 Ind. 427.

The petition for rehearing is overruled.

Ross, J., concurs in the conclusion.

Filed May 28, 1895.

### DISSENTING OPINION.

GAVIN, J.—While one entering upon the grounds of another as a bare licensee assumes all the hazards of their present condition, such as pitfalls, etc., I am unable to agree that, as to the subsequent active negligence of the owner, even a mere licensee and a trespasser are upon the same footing.

LOTZ, J., concurs with GAVIN, J.

Filed May 28, 1895.