CHESAPEAKE & O. RY. CO. v. HAWKINS, Sheriff.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1909.)

No. 803.

1. RAILROADS (§ 359*)—TRESPASSERS—DUTY OF RAILROAD COMPANY.

A railroad company owes no duty to a trespasser on a track except not to injure him maliciously or with gross or reckless carelessness.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1238, 1239; Dec. Dig. § 359.*]

2. RAILROADS (§ 359*)—TRESPASSERS—CHILDREN ON TRACK—NEGLIGENCE—CARE REQUIRED.

Where a brakeman alighted from a car and removed a child four years and three month old from between the rails of a spur track, and the engineer and conductor testified that when they passed a lumber pile adjoining the track they saw the child and another boy standing thereon, but when the engine returned about two minutes afterwards nothing was seen of the children, nor until a half hour later, when the child's body was found lying across the rail next to the lumber, badly mutilated, and the front wheels of the engine covered with blood, it was the duty of the brakeman after first finding the child so situated with no one in charge of him, either to see that he was placed in the care of a competent guardian, or to take such care in the movement of the engine and car as would be required from the knowledge of the child's situation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1239; Dec. Dig. § 359.*]

3. RAILROADS (§ 359*)—TRESPASSERS—CHILDREN—NEGLIGENCE.

Where a child of tender years was removed from a spur track by a brakeman early in the evening on the day of his death in January, and the conductor and engineer of the train as it passed the point saw the child and his companion unattended on a lumber pile close to the track, and after the car had been pushed only 110 feet further up the track the engine returned and ran over the child at the same place, it appearing that the headlight was so placed as to throw its light some distance ahead of the engine leaving a dark space in front of and between the engine and the illuminated ground, the operatives of the train, having seen the child in a place of danger were bound to exercise reasonable care not to run the engine past the place without knowing that the child was safe.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1239; Dec. Dig. § 359.*]

4. DEATH (§ 95*)—CHILDREN—DAMAGES.

Code W. Va. 1899, c. 103, § 5 (Code 1906, § 3488), authorizes an action for wrongful death, and section 6 (section 3489), provides that in every such action the jury may give such damages as they may deem fair and just, not exceeding $10,000, etc. Held, that the fact that a child of tender years was without earning capacity did not limit his administrator's recovery for wrongful death to nominal damages; the jury being entitled to award such sum as in their opinion, under all the facts and

circumstances of the case, was a proper allowance within the statutory maximum.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 115, 120; Dec. Dig. § 95.*]

Goff, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of West Virginia, at Huntington.

Action by E. B. Hawkins, Sheriff, as administrator of Harlow Winterstein, deceased, against the Chesapeake & Ohio Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Herbert Fitzpatrick (Simms, Enslow, Fitzpatrick & Baker, on the brief), for plaintiff in error.

R. T. Hubard, Jr. (Hubard & Lee and Osenton & McPeak, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and MORRIS, District Judge.

MORRIS, District Judge. This writ of error brings for our examination the rulings in a judgment rendered in the Circuit Court of the United States for the Southern District of West Virginia awarding $3,000 damages against a railroad company for the death by negligence of a boy playing on a railroad track. The action was originally brought in the state court, the circuit court for Fayette county, W. Va., and was removed to the federal court at the instance of the defendant on the ground of diverse citizenship.

At the point where the accident happened, there was a spur track running from the main line for the distance of a few hundred feet. By the side of this track about three or four feet from the right-hand rail looking toward the main track there was a pile of lumber about five feet high. On the same side as the lumber pile, and directly opposite, at a distance of 50 feet from the track, was the dwelling house where the deceased lived with his grandfather. The county road ran between the dwelling and the lumber pile. There was no fence or other obstruction. The spur track was at this point straight and practically level. The time of the accident was about half past 6 on an evening in January by Central time (or "slow" time in that locality). A box car was detached from a train on the main line by a flying switch and was "kicked" upon the spur track to a point just below the lumber pile. An engine was then backed up the spur track and attached to the car, and the car was pushed 110 feet further up the spur track and left there; the engine alone coming back past the lumber pile to a point near the main line. A brakeman was on the front end of the box car when it was first "kicked" up the spur track and when it stopped just below the lumber pile. The deceased was about four years and three months old and was observed by the brakeman playing with another boy, a little larger, at the lumber pile picking up some pieces of coal and playing with them; the deceased being on the track in front of the car. The brakeman "got off and made him get from between the two rails." The brakeman then went back

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to the car, and about 12 minutes elapsed before the engine came up. As the car and engine were passing the lumber pile, the brakeman testified that he saw the children standing on the further side of the lumber pile. The engineer and conductor testify that they saw them as they passed standing on the lumber pile. The engineer spoke to the boys as he passed them on the lumber pile. The placing of the car occupied about two minutes from the time the engine with the car passed the lumber pile until it returned. Nothing was seen of the children as the engine came down. About half an hour later the body of the deceased was found lying across the rail next to the lumber pile badly mutilated; the front wheels of the engine on the right-hand side being also found covered with blood.

The exceptions and the errors assigned all relate to the refusal of the court to direct a verdict in favor of the defendant, to its refusal to grant the defendant's instructions, and to certain portions of the charge given by the court.

The instructions asked for, with the exception of the measure of damages, all involve substantially the same question and can be considered together. The defendant's contention is that, the child being upon the track as a trespasser, no liability could arise except for wanton or gross negligence. The principle thus stated is well recognized by the decisions.

In Morrissey v. Eastern Railroad Co., 126 Mass. 377, 380, 30 Am. Rep. 686, the Supreme Judicial Court of Massachusetts said in reference to an injury to a four year old boy playing on the track:

"The plaintiff at the time of the accident was a mere intruder and trespasser upon the railroad track. No inducement or implied invitation to him to enter upon it had been held out. He was neither a passenger nor on his way to become one, but was there merely for his own amusement, and was using the track as a playground. The defendant corporation owed him no duty, except the negative one not maliciously or with gross and reckless carelessness to run over him."

See, also, the cases of: Wright v. Boston & Albany R. R., 142 Mass. 296, 7 N. E. 866; Cleveland, etc., R. R. v. Adair, 12 Ind. App. 569, 39 N. E. 672, 40 N. E. 822; McDermott v. Kentucky Central R. R. Co., 93 Ky. 408, 20 S. W. 380; Mitchell v. Phila. W. & B. R. R., 132 Pa. 226, 19 Atl. 28.

But we concur in the opinion of the Circuit Court that this principle is not decisive of this case. There is another important element involved, and that is the duty of the employés of the railroad company after they had found the child in a dangerous position. When the car was first run up the spur track and stopped below the lumber pile, the deceased was seen by the brakeman in a position of danger. The brakeman testifies in one place that the child was between the rails, and in another place that he was between the rail and the lumber pile in the three-foot space. In either situation he would have been struck when the car proceeded. What, then, was the duty of the brakeman after finding the child so situated and without any one in charge of him? We think his duty was to do either one of two things: Either to see that the child was placed in the care of some one competent to take charge of him, or else to take such care in the

movement of the engine and car as would be required from the knowledge of the child's situation. The child was not returned to any guardian, and the question of the exercise of due care under the state of facts disclosed and the state of knowledge by the defendant's servants was for the jury. The portion of the court's charge relating to this question was as follows:

"Now the plaintiff claims that under those circumstances he has shown a case that indicates, that proves, that the railway company by its employés was negligent, after first having discovered this child, in not using due and proper care in passing out there, to see that the child was not injured. That is a question that is for you to answer. Undoubtedly the railway company through its agents had knowledge of the first danger of this child, and it was its duty to notify the child of its danger (which it is legally presumed the child itself could not appreciate), and see that the child went to a place of safety at that time, and this, from the testimony, was done.

"Now in dealing with this case, gentlemen, you must always keep in mind the fact that this child cannot be presumed to be sensible of its danger. The question therefore before you is this: Were the circumstances such as to impose on that railway company the further duty of seeing that the child had not again gone into danger on its track, when they took their engine out? The measure of that duty would be: What would a prudent man under the same circumstances do? Would he run his engine out—they went slowly it is true—but would he run it without such investigation as would enable him to discover whether or not this child was on the track? When you have settled that question, you have settled the question in this case that will determine whether or not a verdict should be returned.

"If you find that a prudent man should and would have seen that this child was in a place of safety before taking that train out, or would have approached this point with that in mind, then that will be the measure of the duty of the railway company, and if you find that the railway company, through their employés, did not perform this duty, you may say they were negligent and so find; if, on the other hand, you find that they approached with the care that a prudent man under the circumstances would have done, then it would be your duty to return a verdict in favor of the company."

We find no error in this instruction. The principle involved is succinctly expressed by the Supreme Court of Minnesota, in Hepfel v. St. Paul, M. & M. Ry. Co., 49 Minn. 263, 265, 51 N. W. 1049, 1050, as follows:

"A railway company is not bound to keep a lookout for trespassers on its track or cars, nor to presume that they will expose themselves to danger thereon; but having notice of their presence and that they are liable to such danger, the company is bound to use reasonable care to avert it."

The case of Gunn v. Ohio River Railroad Co., 42 W. Va. 676, 681, 26 S. E. 546, 36 L. R. A. 575, draws the distinction that, where an adult is seen upon the track, the presumption is that he will get off; but this is not so with little children. When they are seen on the track, the duty is to stop and save them.

Now in the case before us it was known to the brakeman that the child was on the track, that when ordered off the track he remained on the lumber pile till the car had passed, and that no person of sufficient discretion was near. It was also known to two other employés, one of whom was the engineer in charge of the engine which ran over the child a few minutes later, that the child was playing unattended close to the track. The car was pushed only 110 feet up the track, a large portion of which distance was occupied by the engine and ten-

der. The headlight was so placed as to throw its light some distance ahead of the engine leaving a dark space between the front of the engine and the illuminated ground further down the track. It would be quite possible, in fact probable, that, as soon as the engine had passed, the child would return to his former playground and resume the picking up of pieces of coal which had been interrupted by the passing of the car and engine. We do not think there was any error in leaving it open to the jury to find that a prudent man, under these circumstances, in returning past the danger point where the child was seen unattended a few minutes before, would have taken some means to ascertain that he was in a position of safety. The evidence tended to show that there was no vigilance at all adequate to the situation exercised in running the engine at the time the child was run over.

The duty of vigilance cast upon the railroad's employés by their actual knowledge of the situation of the child on or near the track in a position of danger eliminates entirely the question of how it got there in the first instance. A new duty has arisen from the situation of the child and the train hands' observation of that situation; and it is immaterial to inquire further how the situation arose. It was the province of the jury to determine the action of a prudent man in the situation as it existed after the initial trespass and after the child had been allowed by his grandfather or his 12 year old sister to get into danger. This renders it unnecessary to enter into a discussion of the somewhat conflicting decisions as to the extent of the imputation of the negligence of the custodian as a bar to recovery. It is analogous to the familiar doctrine of the "last clear chance," which allows recovery notwithstanding contributory negligence of the plaintiff if, after and independently of such contributory negligence, the defendant by the use of due care could have avoided the injury or fatality sued upon.

The first instruction asked by the plaintiff in error directing a verdict in its favor and the second, third, fourth, fifth, and sixth instructions negative the controlling principle of the case and were properly refused.

The plaintiff in error further contends that, by reason of the tender age of the deceased and his want of earning capacity, only nominal damages could be recovered by his administrator, and this question is raised by the refusal of the seventh and eighth instructions and the court's charge to the contrary. The brief of the plaintiff in error contains no authorities substantiating this contention, nor do we find any ground for it in the West Virginia statutes.

The statute (Code W. Va. 1899, c. 103, §§ 5 and 6 [Code 1906, §§ 3488, 3489]) reads as follows:

"Sec. 5. Whenever the death of a person shall be caused by wrongful act, neglect, or default, and the act, neglect or default is such as would (if death had not ensued) have entitled the party injured to maintain an action to recover damages in respect thereof; then, and in every such case, the person, who, or the corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to murder in the first or second degree, or manslaughter.

"Sec. 6. Every such action shall be brought by and in the name of the personal representative of such deceased person; and the amount recovered in every such action shall be distributed to the parties and in the proportion provided by law in relation to the distribution of personal estate left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just not exceeding ten thousand dollars, and the amount so recovered shall not be subject to any debts or liabilities of the deceased. Provided, that every such action shall be commenced within two years after the death of such deceased person."

The court of last resort of West Virginia has several times held that the plain meaning of the statute is to leave to the jury the determination of the amount of damages within the $10,000 limit, and the distinction is drawn between the phraseology employed and that of the English statute and the statutes of many other states making the measure the "pecuniary injury resulting from such death." Indeed, the prior West Virginia statute of 1863 (Acts 1863, p. 113, c. 98) did contain the latter phraseology, and the change to the present form is significant of the intent to leave the question to the jury. Kelley v. Railroad Co., 58 W. Va. 216, 222–224, 52 S. E. 520, 2 L. R. A. (N. S.) 898.

In Turner v. Norfolk & Western Railroad Co., 40 W. Va. 675, 688, 22 S. E. 83, 87, the court said of section 6 of the statute:

"By the enactment of this law the Legislature, as it had power to do, gave the jury absolute control over the question of damages, within the limit fixed. The courts are clothed with no authority to disturb their findings, but are inhibited from so doing as positively as though plainly expressed in the language of the statute."

See, also, Thomas v. Electrical Co., 54 W. Va. 395, 404, 46 S. E. 217.

There is also a very full discussion of the same question in the case of Matthews v. Warner, 29 Grat. (Va.) 570, 574–578, 26 Am. Rep. 396, construing the similar statute of Virginia, and holding, similarly, that the statute was expressly designed to substitute such damages "as to the jury may seem fair and just," instead of requiring them to ascertain the pecuniary damages resulting to the next of kin.

The seventh and eighth instructions were properly refused, and the court's charge:

"That the law requires no measure of damages other than the opinion of ordinary jurors, guided by all the facts and circumstances in the particular case, recognizing the fact that, while no minimum is fixed in any case, a maximum of $10,000 is fixed"

—is a correct interpretation of the statute.

The judgment is affirmed.

Affirmed.

GOFF, Circuit Judge, dissents.