McDermott, by &c., v. Kentucky Central Railroad Co.

CASE 73—PETITION ORDINARY—OCTOBER 22.

# McDermott, by &c., v. Kentucky Central Railroad Company.

### APPEAL FROM BOURBON COURT OF COMMON PLEAS.

RAILROADS—TRESPASSERS IN YARD.—An engineer of a moving train, whether passenger or freight, is required to give signals of its approach to certain places, and diligently keep in view the track ahead of him for safety of those who have a right to go on or across the track, and of passengers being transported, but not for protection of a trespasser on the track whose death or injury the company can be made legally liable for only in case his peril was discovered, or by diligent attention of the engineer to his duty to others, might have been discovered in time to prevent the train running on him. And the company is no more obliged to look out for the presence of trespassers on its yard than for trespassers on the main track away from the yard. Nor does the fact that a trespasser is an infant affect the legal rights of the company.

A boy eight years old, while standing on a railroad track in the yard of the company, was struck by a slowly backing engine, of the movement of which no signal was given, and upon which there was no person except the engineer. It does not appear that the presence of the boy on the track was discovered until he was struck by the engine. *Held*—That the company is not liable.

WARD & DICKSON, CHARLES J. BRONSTON FOR APPELLANT.

1. If there be any evidence, however slight, conducing to show the right of recovery, the plaintiff has the right to have the question settled by the jury. (Given's Adm'r v. Ky. Cent. R. Co., 12 Ky. Law Rep., 950.)
2. It is the duty of the servants in charge of an engine or train of cars on that part of a railroad track in a town or city known to be used by the public as a passway, to keep a lookout for persons on the track. (Lou. & Nash. R. Co. v. Potts' Adm'r, 13 Ky. Law Rep., 345; Conley v. Cincinnati, &c., R. Co., 89 Ky., 402; Lou. & Nash. R. Co. v. Schuster, 10 Ky. Law Rep., 67; Shelby's Adm'r v. Cincinnati, &c., R. Co., 85 Ky., 224.)
3. The neglect of the parent in taking care of the child can not be imputed to the child so as to prevent a recovery by it. (G. H. & H. Railway Co. v. Moore, 46 Am. Rep., 265; Huff v. Ames, 49 Am. Rep., 716.)

GEO. C. LOCKHART FOR APPELLEE.

Plaintiff had neither the express nor implied consent of the railroad company to go or be upon its tracks or in its yard, and the company

not being bound to anticipate his presence on the track owed him no duty except to avoid injuring him after his peril was discovered. (Shackleford's Adm'r v. L. & N. R. Co., 84 Ky., 43; Gastineau's Adm'r v. Ky. Cent. R. Co., 83 Ky., 119; Shelby's Adm'r v. Cincinnati, &c., R. Co., 85 Ky., 224.)

2. The plaintiff was guilty of such contributory negligence that he can not recover. Although young, he was capable of the discretion of an adult and the rule applicable to adults must be applied to him. (Gastineau's Adm'r v. Ky. Cent. R. Co., 83 Ky., 119; Twist v. St. Peter, &c., R. Co., 37 Am. and Eng. Railroad Cases, 340.)

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant, an infant suing by his father, brought this action to recover for an injury to his foot, resulting in amputation just above the ankle, caused by one of appellee's locomotives running over it. But the lower court having, at conclusion of plaintiff's evidence, instructed the jury to find for defendant, which was done, the single question presented on this appeal is whether there was evidence conducing to show legal liability for the injury complained of.

It appears that the railroad track upon which appellant, then about eight years of age, got hurt, was one owned by appellee leading from Paris, where it occurred, to Maysville, there being three other tracks near the depot. Of these the most western, Kentucky Central, leads to Covington, and between it and Maysville track is a switch track to a turn-table and another switch track to some place not made clear by the evidence.

The father of appellant resides and keeps a boarding-house and saloon where the Winchester turnpike crosses the Kentucky Central Railroad, about four hundred feet from the depot toward Lexington, and had directed an elder son to go to the depot for the purpose of meeting his mother, who was expected to come that afternoon on the Kentucky Central from Covington.

Appellant, though not required nor having permission, accompanied his brother, as did also their little sister. But the train not arriving on time, the eldest boy, for some private purpose not connected with business of the company, proceeded from the depot to appellee's blacksmith-shop, which had to be reached by going along on or beside the railroad tracks; and appellant went to the oil-house west of the Covington track, their sister returning home.

After remaining at the oil-house a short time, appellant started to follow his brother, going across the Covington and two intermediate tracks; but whether it was necessary for him in order to reach the shop to also cross or go upon the Maysville track does not clearly appear from the evidence.

The engine, No. 10, which did the injury, had that afternoon pulled the Maysville train to Paris, and was, with tender attached, when appellant left the oil-house, upon the turn-table, and before it left there he had crossed the three tracks and probably reached the Maysville track. After going from the turn-table track to the Maysville track, engine No. 10 was backed on the latter toward cars it was designed to be hitched to, and at a short distance from intersection of the two tracks the tender struck appellant, who, as he testifies, had stopped on the track to pick a cinder from his foot, his face being turned away from the backing engine.

The evidence shows no warning by bell or whistle was given of the retrograde movement of the engine. Nor was there any person on it at the time except an employe, termed hostler, whose business, it seems, is to do the

necessary switching of engines and cars about the company's yard.

But it was developed by the evidence offered for plaintiff that the place to which he was going, as well as the one he was at when hurt, is within the company's yard, to which he had no right, nor could safely go.    And, although there was some testimony showing that persons occasionally passed from Vine street along or upon the track to the depot, it does not appear such passway was then being regularly used, or ever was used by license of the company, express or implied.    On the contrary, a signboard had been put up by which persons, other than employes of the company, were notified to keep off the tracks at and in vicinity of the place appellant was injured.    And he had been several times driven away, force being at one time used for that purpose.

There is no evidence the person in charge of engine No. 10 while at the turn-table saw appellant crossing the tracks; and it is apparent he did not see him on the Maysville track prior to the injury, because the tender obstructed his view.    Nor was the engine moved at either an unusual time or rapid rate of speed, but at the usual time and in the customary mode it was backed so slowly as to be stopped within length of the tender after notice was given of appellant's presence on the track.    It is therefore clear that if appellee can be charged with any negligence at all, it consists of the failure to give warning of the movement of the engine and to have a person in a position to see the track ahead of it.

It is a well-settled rule that the engineer of a moving railroad train must give distinct signal of its approach to a station or public crossing, and keep a lookout for per-

sons lawfully crossing the track. And there are circumstances under which legal liability will arise for running a train on even a trespasser. But the general right of a railroad company to use its own property in its own way can not any more than that of a natural person be unreasonably restricted; the only difference being that a greater degree of care and diligence is required in operating railroads so as to avoid injuring persons or property of others than is generally needed in the conduct of less hazardous business of individuals. And, as a matter of right, as well as in the interest of the public, a railroad company should have the same immunity from hindrance and interference with management of its business by trespassers and intruders that any other corporation or natural person is legally entitled to. It thus results that an engineer of a moving train, whether passenger or freight, is required to give signals of its approach to certain places and diligently keep in view the track ahead of him for safety of those who have a right to go on or across the track, and of passengers and property being transported, not for protection of a trespasser on the track, whose death or injury the company can be made legally liable for only in case his peril was discovered, or by diligent attention of the engineer to his duty to others, might have been discovered in time to prevent the train running on him. Accordingly, as moving engines and cars to and fro in the yard of a railroad company is indispensable to safe and proper conduct of its business, it should be no more obliged to specially look out for presence of those who may go there without right than for trespassers on the main track away from the yard. For to require the bell rung or whistle blown at every movement of an engine in

the company's yard to and from a coal-chute, water-tank or turn-table, however slowly or short the distance it might have to go, or that an extra employe be placed upon every backing engine simply to warn or look out for presence of persons having no right or reasonably expected to be there, when not at all necessary for safety of persons or property legally entitled to care and protection by the company, would be unreasonable and oppressive. And the fact that such trespasser is an infant does not affect the legal rights of the company, because signals of approaching engines must be given and oversight of the tracks exercised uniformly and habitually or not at all, and for protection and safety of all trespassers or none. In this case, however, appellant, though only eight years old, is, as shown by his own testimony, unusually intelligent and familiar with daily movement of trains about Paris. He knew time of arrival of each train; by what engine, according to number, it was drawn, and that No. 10 went each day to the turn-table, thence back to the Maysville track in just the manner and about the time it did on the day he was hurt; in fact, he saw it on the turn-table as he went from the oil-house across the tracks. The evidence makes it clear he had at the time capacity enough to understand and avoid the danger he placed himself in, and it was therefore incumbent on him to exercise necessary care for his own protection.

In our opinion the evidence does not show or tend to show the injury to appellant resulted from actionable negligence of appellee or any of its servants. Neither the case of Shelby v. Cincinnati, &c., Railroad Co., 85 Ky., 224, nor Conley's Administrator v. Cincinnati, &c., Railroad Co., 90 Ky., 402, is like, or conflicts with our opinion in this.

In the first named the person killed was not a trespasser, but went upon the track near a through freight train for a legitimate purpose connected with business of the company, when he was struck by a detached car cut off from the engine, and, without any one upon it, permitted to go at a rapid rate of speed three hundred yards, near a passway regularly used by persons in the town where it occurred. But it was there held, as here, that a railroad company is not required to anticipate the presence of a person who intrudes into its private yard. In the other case cited Conley, while on or attempting to cross the track near a regular passway over it in a town, on a dark night, was run on and killed by cars detached from the engine and suffered to move on a down grade. And there was not only a failure to place light on the front part of the cars, or use other means to give warning of their approach to the passway, but as the section of the train to which the engine was attached had already passed, it was a reasonable supposition the track could be safely crossed. It was therefore held that a case of actionable negligence was presented, notwithstanding the deceased might have been technically a trespasser. But a distinction was recognized between such case and one where the injured party, knowing existence of danger, purposely or negligently puts himself in the way, as did appellant.

Judgment affirmed.