WHILTON v. RICHMOND & D. R. CO.

(Circuit Court, D. South Carolina. September 19, 1893.)

1. RAILROAD COMPANIES — ACCIDENTS AT CROSSING — CONTRIBUTORY NEGLIGENCE—INSTRUCTIONS.
    In an action for injuries received at a railroad crossing, plaintiff offered testimony that he stopped and listened; and defendant, that the whistle was blown and the bell rung; and the court instructed the jury to decide the issue of fact from the testimony. *Held,* that the failure of the court to charge that contributory negligence of plaintiff is a matter of defense, which defendant must show by a preponderance of evidence, was not reversible error.

2. SAME—CONSTRUCTION OF STATUTE.
    Gen. St. S. C. § 1529, relating to cases of personal injury by collision with an engine or cars at a railroad crossing, is in derogation of the common law, and, being strictly construed, does not apply where horses are frightened by a train at a crossing, and the person injured is thrown from the vehicle, but not so as to come in collision with the train.

3. JURY—PROVINCE—CONFLICTING TESTIMONY.
    Where the testimony is conflicting, the determination of the fact is exclusively within the province of the jury.

At Law. Action by Ebenezer J. Whilton against the Richmond & Danville Railroad Company for damages for injuries received at a railroad crossing. Verdict for defendant. Plaintiff moves for a new trial. Denied.

John R. Bellinger, for the motion.
Cothran, Wells, Ansell & Cothran, opposed.

SIMONTON, District Judge. This issue having been submitted to a jury, and their verdict being for the defendant, the plaintiff now submits his motion for a new trial. The case, as it went to the jury, was substantially as follows:

The plaintiff, a stonecutter by trade, and at the time employed in the building of the waterworks on Paris mountain, was in Greenville, with a companion, another stonecutter, on the night of the accident sued on. They remained in Greenville until after midnight, and then left for Paris mountain in a four-seat wagon, drawn by a horse and a mule, they and the driver being the only occupants of the vehicle. There is some discrepancy in the testimony as to the character of the night. It was most probably an ordinary, clear, starlight night. On their way it became necessary to cross the railroad of the defendant at the Paris mountain crossing. Just before the railroad track crosses this public road, there is a considerable curve, almost up to the crossing. The plaintiff, his companion, and the driver concur in saying that before crossing the track they stopped and listened, and heard nothing of an approaching train. They vary a little as to the length of time of their stop. Hearing nothing, they went on, and just as they were crossing the railroad track they suddenly saw approaching, at speed, a locomotive and train. The team became alarmed, and dashed across. The plaintiff was thrown from the wagon a few feet from the track. He says that he lost consciousness in the fall; that the wagon proceeded some distance, and then returned to him, when his companion got out of the wagon and helped him in. This companion says that the team took fright, and dashed off to some distance; that he aided in turning them, went back with the wagon to where plaintiff was lying on the ground, lifted him up, and put him in the wagon. The driver, a young white man, quite intelligent, says that as the train dashed by the team started, and went a very little way off the road; that he kept control of them, and backed them into the road; that then he saw plaintiff walking up, evidently lame; and that on reaching the wagon he was assisted by his companion, who extended his hand to him without leaving his seat. The plaintiff was carried to his lodging on the mountain, and remained all of the next day in bed, Sunday. On Monday he went to work, but did not remain all day. On Thursday he left Greenville, and went to Georgia, on another job. The plaintiff says that when he fell the wheel of the wagon passed over his legs, his chest, and across the lower

part of his body at the hips, and that, by this last, hernia was produced. He has worked at his trade since the accident, but he says that his capacity for work has been much diminished. He has to wear a truss. The medical examination of this man was made long after his accident, and it came out in the examination that he has married a wife since it occurred. The crew of the train which caused the accident testified that before approaching the crossing the whistle was blown, and that the bell was rung until the crossing was reached. This is the testimony bearing on the accident itself. The jury, during the trial, inspected the locus in quo, and, while so engaged, a train of cars passed them at the crossing. No exceptions were noted during the trial. No written request to charge was submitted, and no exceptions made to the charge. The following is the substance of what was said to the jury. In delivering it, the court simply amplified points in it, and repeated such parts as was deemed necessary.

"This case turns entirely upon the question, were the railroad people negligent, and was there no negligence whatever on the part of the plaintiff? for, even if you should come to the conclusion that the railroad people were negligent, still, if the plaintiff could have avoided the accident by the exercise of proper care, and negligently did not exercise it, he cannot recover anything. Then you examine into the testimony, and inquire, first, were the railroad people negligent? The law requires them, when approaching a public crossing like this,—the Paris mountain crossing,—to blow the whistle and ring the bell from a point 500 yards off until the crossing is reached. If this was not done, they were negligent. Did they do this, or not? This you determine from the testimony. If you come to the conclusion that they did not ring the bell and blow the whistle, then you must decide from the testimony whether the plaintiff was also negligent. Could he, by the exercise of due care,—that is, the care a prudent man would exercise,— could he have heard the coming train, and so avoided it? If he could have heard the train coming, and so could have avoided it, he cannot recover. If you conclude that the railroad people were negligent, and that the plaintiff was not negligent, then you inquire, was the plaintiff injured thereby? Was he thrown from the wagon by the fright of the team, or did he fall from any other cause? If he was thrown from the wagon by the sudden start of the team from fright caused by the train, then to what extent was he hurt by this. This you decide from the whole testimony. [Repeat some of this.] If you conclude that the whole fault was on the part of the railroad people, no fault on part of plaintiff, and that the plaintiff was hurt thereby, you must compensate the plaintiff, not by punishing the defendant, but by giving him such a sum of money as will compensate him. He evidently has not been entirely disabled from work in his special calling. So, in fixing your damages, you must confine yourselves to compensating him for such impairment of his ability as the accident caused."

The motion for a new trial is based on five points, four of them law points.

The first ground is the failure of the court to charge the jury that contributory negligence is a matter of defense, and that plaintiff is not called upon to show the absence of contributory negligence, but it was incumbent upon the defendant to show by a preponderance of evidence that such negligence did exist, in order to make it available. A jury trial is a practical thing. There is no room for abstract principles of law. The plaintiff

offered testimony tending to show that he and his companions stopped and listened, and so were not guilty of contributory negligence. To this defendant offered testimony to show that the whistle was blown and the bell rung. The jury was instructed to decide this issue of fact from the testimony.

The next ground is that during the examination of Surratt, a witness for the defendant, the judge warned the plaintiff's attorney to be careful, and that the defendant's attorney subsequently, when the case went to the jury, propounded a theory that the whole case was a conspiracy against the defendant, in which Surratt had a part, and that this tended to create the impression in the minds of the jury that such a conspiracy really existed, and that but for the warning of the judge the plaintiff's attorney, continuing the examination, would have developed this fact. This exception is evolved from the constitutional modesty of the plaintiff's attorney. Not even the most simple of laymen who witnessed his management of his case, and his full possession of it, would believe for a moment that he would inadvertently bring out such damaging testimony. Surratt was called by the defendant, but was openly hostile to that side. The defendant's attorney had exhausted ability and ingenuity in endeavoring to get out of him evidence that plaintiff had tempted him, with money, to testify. His questions were put in every conceivable form, and every effort to get out admissions to that effect had been met and excluded. The warning by the judge, given during cross-examination, was that possibly these objections might have been cured. The suggestion made by the defendant's counsel that there was a conspiracy was pure theory, in no sense a condition supported by fact.

The next ground is that the preponderance of the evidence was in favor of the plaintiff. No doubt the counsel thinks so. The court may think so. But the question is one neither for the court nor the counsel. It is exclusively within the province of the jury, and they thought otherwise. In trial by jury, at common law, where there is a conflict in the evidence on a vital issue, and the jury decide this conflict, the decision is final, unless it can be made to appear that the jury were corrupt or partisan. Of this there is not a shadow of proof here. It is to be regretted that the phrase "preponderance of evidence" is so much used. It is metaphysical, and always confuses a jury. In its last analysis the verdict of a jury depends upon what witnesses they believe. You may pile up testimony, Pelion upon Ossa, on one side, and produce but a single vital fact on the other, and the verdict of the jury is fixed. They do not go balancing testimony, setting up this witness against that, discussing their age, the color of their eyes, the length of their noses, or the trim of their beards. They simply believe one man; they do not believe a multitude of others who contradict him.

The fourth ground is based on a statement of fact as to what occurred during the argument. The fact is denied by the defend-

ant's attorney. The attention of the court was not attracted to it, and he cannot decide it.

The last ground has received most careful consideration. It is this:

"That the court should have charged the jury that if they found that the proper signals were not given by the agents of the defendant, and that such neglect contributed to the injury, the defendant would be liable for all damages caused thereby, unless the plaintiff was guilty of gross or willful negligence, or was acting in violation of the law, and that such gross or willful negligence, or such unlawful act, contributed to the injury."

This is the language of section 1529 of the General Statutes of South Carolina, and it is apparently intended to change, in so far as railroads are concerned, the law of contributory negligence. We will assume, simply for this case, that this peculiar provision of law of South Carolina controls this court. It is not easy to construe this section. It is almost if not quite impossible to define shades of negligence. The surrounding circumstances determine this. What would be in some places, and under some circumstances, slight negligence, in other places, and under other circumstances, would be negligence amounting to recklessness. See Bridger v. Railroad Co., 25 S. C. 30. Then, what is meant by "willful negligence?" Is it a synonym of "gross," or is it more intense in meaning, involving suicidal intent? See Petrie v. Railroad Co., 29 S. C. 315, 7 S. E. Rep. 515. Whatever may be the definition, is it too much to say that a man in a vehicle drawn by animals, who about midnight approaches a railroad crossing known to him to be at the end of a sharp curve, and neither stops or listens for the mail train due about that time at that point, or does not hear its bell or whistle, or, hearing it, still goes on,—such a man, under such circumstances, would be guilty of gross, willful, suicidal negligence? But the judge made no allusion to this section whatever. If nothing whatever had been said in the charge on this point, the omission of the judge to charge upon it would not now induce him to grant a new trial. If he omitted it, and counsel did not call it to his attention, either by a request to charge on it, or by an exception, it is too late now to correct it. The court sits to correct its own errors, not those of the counsel. But the charge does instruct the jury as to contributory negligence, and does not allude in any way to the statute. Was this error? Did this section apply to the fact proved on the trial? At common law the doctrine of contributory negligence is as stated in the charge. One cannot recover for an act of negligence to which he has contributed. The construction put on this section—and for the purpose of this case we assume it to be correct—changes this general law. It is thus in derogation of the common law, and must be construed strictly. Indeed, it is in the nature of a penal statute to enforce a statutory obligation. We cannot, therefore, bring cases within the equity of the statute. The section, by its terms, applies only to cases in which a person is injured in his person or property by

collision with the engine or cars of a railroad corporation at a crossing. Kaminitsky v. Railroad Co., 25 S. C. 53, does not enlarge the language of this section. That case only holds that, when one is injured in his person by collision with a train at a public crossing, it makes no difference whether he placed his person in the path of the collision, or whether he was thrown from a vehicle under the train, by reason of the fright occasioned by the train in the animals drawing the vehicle. This section has no place in this case. The motion for a new trial is overruled.