FELTON v. AUBREY.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

No. 371.

1. CONTRIBUTORY NEGLIGENCE—DEGREE OF CARE—INFANTS.

The degree of care required from an infant to avoid injury through the negligence of others depends upon his age, experience under like circumstances, intelligence, and comparative maturity and capacity; and it would be unreasonable to require from a boy nine years of age so high a degree of care and watchfulness for his own safety as would be exercised by a person of more mature years; but when such an infant has been injured solely in consequence of his own recklessness, without fault of any other party, as by attempting to jump upon a moving railroad train, from a position outside the track, where he was in no apparent danger, such as to impose any duty on the railroad company, his immaturity of years or discretion has no bearing on the question of the liability of the railroad company for his injuries. An instruction to the jury which fails to make this distinction clear, in a case where there is a

conflict of evidence as to whether such an infant was injured while crossing a railroad track or by attempting to jump on a moving train, constitutes error.

2. RAILROAD COMPANIES—TRESPASSERS—INFANTS.

A railroad company owes no higher duty to an infant trespassing upon its tracks than to an adult, and is not liable for injuries suffered by such a trespasser, unless, after the discovery of his presence on the track, it has failed to use ordinary care to avoid injuring him.

3. SAME—CROSSING TRACKS—IMPLIED LICENSE.

It seems that if it is shown that the public has, for a long period of time, customarily and constantly, openly and notoriously, crossed a railroad track, at a place not a public highway, with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the tracks at that point may be presumed. Persons availing themselves of such an implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence.

4. SAME—PROOF.

It seems that, to establish such an implied license, it is essential that the use shall have been definite, long, open, and continuous. Neither the fact that the track is within the limits of a town, nor that it crosses an open common, or is unfenced, or is frequently used as a walkway, and no active steps have been taken to prevent such use, is sufficient, of itself, to justify the presumption of a license.

In Error to the Circuit Court of the United States for the District of Kentucky.

The plaintiff below, Thomas Aubrey, is a boy nine years old. His suit was by his father, as next friend, and was for personal injuries sustained through the alleged negligence of the plaintiff in error in the operation of the railroad committed to his charge as receiver by an order of the circuit court of the United States for the district of Kentucky. There was a verdict for defendant in error and judgment thereon. The petition alleged that the plaintiff had been run over by a train of freight cars, while he was crossing the track of defendant's railroad, within the corporate limits of the city of Lexington, Ky. The defense was that the defendant's servants had been guilty of no negligence, and that plaintiff had been hurt while trying to climb upon a moving train of cars from the side of the track. The evidence tended to show that the defendant in error sustained his injury at a place where one of the railroad company's tracks crossed an open common upon a high embankment, from 20 to 25 feet above the level of the common. This common, though within the corporate limits of the city, was in the suburbs. On it were located the city workhouse and a city quarry. It was with this exception an open, uninclosed space, used for a general dumping ground. It was crossed in every direction by people residing in the neighborhood, and was to some extent used as a pasture for grazing cattle. The evidence tended to show that the track crossing it was a switch track, connecting the freight depot with the main track. Regular trains did not use it, and only a switch engine moved cars over it, between a freight depot and the main track. There was evidence that it was a part of the yard track of the defendant company, though this evidence was meager, and not altogether satisfactory. The train which injured the defendant in error was composed of an engine and seven cars, and was going to the freight depot. There were three cars in front of the engine, and four behind. The front car was a flat car loaded with lumber, and the rear car was also a flat car, loaded in same way. The defendant was on the commons, watching or tending to cows turned out to graze. He says his cows ran up the embankment, and over the track, and down on the other side. He followed. His account of his injury is as follows: "Q. How did you get up on the track? A. I went up that way [witness indicates his movement]; kind 'a slanting up the hill. Q. Did you hear the train coming? A. No, sir. Q. How far did you walk on the track? A. I don't remember. Q. Did you go straight across the track or slanting? A. I went

slanting. Q. When you got up where the track was, did you hear the train coming then? A. No, sir. Q. Did you hear any whistle blown? A. No, sir. Q. Did you hear any bell rung? A. No, sir. Q. What was the first thing that attracted your attention? What did you first see or hear? A. I never saw or heard anything. Q. Where were you? Had you gone clear across the track when the cars struck you, or were you inside, between the rails? A. I was right at the rails when the train run me down. Q. On the same side or on the far side? A. On the far side. Q. You were nearly across them? A. Yes, sir. Q. What kind of a train was it? A. A yard engine train. Q. After you were hurt, what became of you? A. I took and rolled down the hill. Q. What was done then? A. A man took and brought me home. Q. What man was that? A. I don't know. It was Mr. Robinson." On cross-examination he said: "Q. Did you look to see if anything was coming? A. No, sir; I didn't look to see if anything was coming. Q. When you got halfway up, it was still pretty high up? A. No, sir. Q. Then you went cater-cornered across the track? A. Kind 'a cater-cornered. Q. What part of the train struck you? A. The front part. Q. Which car? A. I don't know. It was the front one. Q. Suppose you were standing on the track, and the train was coming; what would you do? A. I would get out of the way if I saw it. Q. How would you get out of the way,—get off the track? A. Yes, sir. Q. Do you stand on the railroad track without looking to see if anything is coming? A. Of course, I would look to see if anything was coming. Q. Whenever you would go on the railroad track you would look? A. Never was upon it. Q. You mean except that morning you was hurt? A. Yes, sir. Q. Did you look that morning? A. No, sir. Q. If you had seen the train, would you have gone upon the track? A. No, sir; I would have went back if I had any show to. Q. What do you mean by that? A. If I would be on the track, and would see it coming, if I could get out of the way, I would get out of the way. Q. Do you remember any boy getting up on the cars that day? A. No, sir. Q. Didn't you try to get up on the cars that day? A. No, sir. Q. Never saw the freight car and try to get upon it? A. No, sir." There was other evidence tending to show that he was struck by the car in front and while crossing the track, some of which also tended to show that he must have gone upon the track immediately in front of the approaching train. So there was evidence of a negative character, tending to show that there was no person on the front of this train on the lookout, and that no bell was sounding. There was some conflict as to the speed of the train, though the very great weight of evidence was that the speed was not in excess of five or six miles per hour. Upon the part of the defense there was evidence tending strongly to show that the defendant in error did not appear upon the track in front of the train at all, and was not run over by any car in front of the engine, but that from a place on the side of the track he undertook to climb upon one of the cars behind the engine, lost his hold, and was run over. This switch track ran upon the embankment for some 600 feet without being crossed at grade by any street. The accident occurred about midway between the two streets crossing at grade. There was evidence that this track was frequently crossed by people crossing the common. At the southern end of the embankment there was a sign on which was inscribed, "No trespass." Under objection, an ordinance of the city of Lexington was admitted as evidence, limiting the speed of trains within the city to six miles per hour, and requiring that the bell should be rung while passing through the city. At the conclusion of the whole evidence, a motion by the plaintiff in error for a peremptory instruction in his favor was disallowed.

C. B. Simrall, for plaintiff in error.

John R. Allen, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

There was a very sharp conflict in the evidence upon the vital question as to whether the defendant in error appeared on the track in front of the train, or whether, from the side of the road, he under-

took to grab and climb up on a car as it passed him.    If the evidence
of the injured boy is credited, he did not undertake to climb upon the
cars, but was overtaken as he was crossing the track in front of the
train.    In this aspect of the case, it became very material to deter-
mine whether the defendant in error was himself in the exercise of
ordinary care and caution.    He says in his own evidence that he nei-
ther saw nor heard the approaching train, and that he did not look
to see if anything was approaching.    It was broad daylight.    There
was nothing to prevent him from seeing if he had looked.    Clearly,
on this admission, a responsible adult would have been guilty of such
gross negligence as to defeat any recovery, unless the railway com-
pany, after discovering his situation in time to have avoided injury
to him, used no exertion to ward off the danger.    The defendant
was an infant of nine years, and it would be unreasonable to require
from an infant so high a degree of care and watchfulness for his own
safety as would be ordinarily exercised by a person of more mature
years and sounder discretion.    From an infant of tender years less
discretion and intelligence is required than from an adult.    The de-
gree of care and caution to be required from a child circumstanced
as this boy was would depend upon his age, experience at such places,
and his intelligence.    The prudence and caution due from such a
boy should be measured by his comparative maturity and capacity,
and each case must depend upon the facts and circumstances of that
case.    Railroad Co. v. Gladmon, 15 Wall. 401; Railroad Co. v. Stout,
17 Wall. 657.    The care and prudence to be required of a boy nine
years of age is that to be reasonably expected from such a boy, or
from boys of that age, looking to his habits and knowledge of the
danger to be apprehended.    Reynolds v. Railroad Co., 58 N. Y. 248;
Barry v. Railroad Co., 92 N. Y. 290; Wood, R. R. (Ed. 1893) 1470,
1471; Railroad Co. v. Hoehl, 12 Bush, 41.    But if, on the other
hand, the defendant in error was not on the track, nor near enough
to be struck by a passing train, nor in a position in which he ap-
peared to be in danger, or about to get into danger, and from the
side of the track undertook to grab and climb upon a moving train,
his immaturity of years and discretion would have no bearing what-
ever.    In such case the railway company would be guilty of no
negligence, and the injury sustained by the defendant in error would
not be the result of any fault or breach of duty by the railway com-
pany.    If there was no breach of duty, then there was no wrong,
irrespective of the boy's capacity to know that what he was doing
was dangerous.    We do not think this distinction was made plain
to the jury.    Upon this point, the court, in discussing the effect of
the contributory negligence of the defendant in error, said:

"Did the complainant himself cause the injury by his own negligence? Was
he, under the facts as presented to you, guilty of negligence himself, which, but
for that negligence, the accident would not have happened? Upon this branch
of the case the burden is upon the defendant, that pleads the contributory neg-
ligence.    You have heard the evidence upon this subject.    The statement of
witnesses as to where the plaintiff was (the plaintiff's witnesses) at the time the
train struck him, or immediately before; how he happened to be there.    You
have heard also the other witnesses on the same point; and you have heard the
statement of witnesses which tend to show (whether it proved that is for you

to determine) he was attempting at the time to get on the train. In considering this question of contributory negligence, you must consider the boy himself, his own age, and his own capacity, and say whether he was guilty of attempting to get on the train, moving as it was, or getting on the track when the train was so close to him that he could not be saved by any care of the trainmen. If it be, in point of fact, proven to your satisfaction, by the preponderance of evidence, that this boy was attempting to get on that train, moving as it was, not having any right there or any business there on that track, then you might find very properly that, though the defendant was guilty of negligence, the complainant could not recover, because of his own negligence. Or if you find that he recklessly got on that track, knowing the train was coming, and thus was injured, you would, in that event, find for the defendant, because of the negligence of the complainant. You should, in considering this matter, consider the immaturity of a boy's judgment as compared with that of a man, or the want of capacity of a boy as compared with that of an adult, if that be the case. This question of contributory negligence is a question to be measured by the facts in each particular case. Though this boy may have been of tender age (nine years old at the time, as the evidence here would indicate), still that does not give him the right to recover as against this road if he himself, under all the circumstances, was guilty of negligence. As I say, considering him as a boy of that age, with the capacity which was exhibited before you, if you find that he himself brought on the injury by his own carelessness, that is an answer to this case. As I say, the burden of this branch of the case is upon the defendant."

This charge is subject to the criticism that the jury might well infer that the immatureness of the plaintiff would excuse his conduct, and cast a liability upon the company, not because it had been guilty of any wrong, but because an immature and irresponsible person had been hurt without fault of the railway company. To straighten out this evident unintentional confusion of two distinct matters, the court was requested to charge as follows:

"The court instructs the jury that if they believe from the evidence that the plaintiff, Thomas Aubrey, attempted to climb upon defendant's train while it was in motion, and, in making said attempt, received the injuries complained of in his petition, the jury shall find for the defendant."

This the court read to the jury, and said: "That, I believe, I have already explained to you." This, in all probability, gave the jury to understand that the request, as read, was the law, subject to the explanation already given, as to the effect to be given to the incapacity and immaturity of the plaintiff. If the plaintiff in error was injured in trying to climb upon the train from the side of the track, as it moved past him, then it is difficult to see, upon the evidence in this case, wherein the railway company has been guilty of any negligence whatever. Contributory negligence implies some negligence by both parties. The plaintiff in error was entitled to have this question presented to the jury freed from all questions as to the effect of the immaturity or incapacity of the defendant in error to contribute to his own injury. For this error a new trial must be awarded.

It was insisted below that the defendant in error was a trespasser, and that the railway company owed no duty to him until his presence on the track was discovered. In accordance with this theory, the court was requested to charge as follows:

Request No. 3: "The court instructs the jury that the plaintiff was a trespasser upon the tracks of the defendant at the time and place of his injury, and the jury must find for the defendant unless the jury believe from the

evidence that the presence of plaintiff on defendant's tracks was known to the agents of defendant in charge of its train before plaintiff was injured, and that, after the presence of plaintiff on said tracks became actually known to said agents of defendant in charge of its train, the said agents could have avoided injuring plaintiff by the exercise of ordinary care upon their part, which degree of care they failed to exercise, and, by reason of said failure, plaintiff received the injuries complained of in his petition, in which event the jury shall find for the plaintiff."

Request No. 4: "The court instructs the jury that if they believe from the evidence that the plaintiff, Thos. Aubrey, went upon the track of defendant's road so close to an approaching train running thereon that it was impossible to stop or slacken the speed of said train in time to avoid injuring plaintiff, even if the agents of defendant in charge of said train had seen the plaintiff when he first went upon said track, the jury shall find for the defendant."

Request No. 5: "The court instructs the jury that if they believe from the evidence that the track upon which the plaintiff was injured was on the commons, and in a sparsely-settled part of the city of Lexington, and that said track was a part of defendant's yard in the city of Lexington, and was used only for the switching of trains and cars, then the defendants, as to trespassers on said track, were not required to give notice of the moving of its engines and cars upon said tracks, and that the failure to give said notice of the movement of trains was not negligence as to such trespassers."

All of these requests were declined. The fifth and last request was, doubtless, declined because the court was of opinion that the facts of the case made it inapplicable. It clearly embraced a proposition of law which has met with the distinct approval of this court. Railroad Co. v. Cook, 31 U. S. App. 277, 13 C. C. A. 364, and 66 Fed. 115. So is the law of Kentucky. McDermott v. Railroad, 93 Ky. 408, 20 S. W. 380.

The evidence touching the question as to whether this track constituted a part of the private switching yards of the railroad company was, undoubtedly, very meager, and we are not prepared to say that there was evidence enough as to the character of this track to justify a reversal for refusing to give the charge in question.

The third request involves the question as to whether, under the evidence, the defendant in error was indisputably a trespasser. In any reasonable view which may be taken of the testimony exhibited by this record, the defendant in error was not seen or known to be on the track or in danger by those managing the train which ran over him until he had already been run over, or until it was too late to check the train or give any warning which might have averted the accident. But it is said that it was the duty of the railroad company in moving its engines or cars where this accident happened to give warning of the approach of its trains, so that persons in the vicinity of the track might be cautioned and advised of the danger to be apprehended in going on the track, and that there was evidence to show that no whistle was sounded and no bell was being rung, and that the lad was therefore unaware of the approach of this train, and might have been saved if the company had moved its cars with proper prudence at such a place. But if the boy was wrongfully on the track, or wrongfully attempting to cross where he had no right to cross, then he would be a trespasser, and the company was under no legal duty to anticipate trespassers, or to move its trains with reference to the probable presence of such intruders. There was no statute making it the duty of the company to watch its general track,

or give warning by bell or whistle except at places where its track was crossed by a public highway or street. Where no statute controls, the common law must determine the legal duty of a railway company in respect of the proper and prudent movement of its trains. That such companies have the right to a clear track, except where the public have also an easement of way, must be conceded. But upon its general track, where the public have no equal easement or right of way, a railroad company may operate its trains without regard to the possibility that unauthorized persons may be trespassers thereon. It need not anticipate the presence of such intruders either upon its general track or in its strictly private yards. This principle has been so frequently announced by the courts of this country that it seems needless to consider the ground upon which the general rule rests. This court quite lately has had occasion to state and enforce the principle. Railroad Co. v. Cook, 31 U. S. App. 277, 278, 13 C. C. A. 364, and 66 Fed. 115; Newport News & M. Val. Co. v. Howe, 6 U. S. App. 172–185, 3 C. C. A. 121, and 52 Fed. 362. The law imposes no duty in respect to trespassers upon its track, "except that general duty which every one owes to every other person to do him no intentional wrong or injury. Its liability to discharge this duty can only arise when it becomes aware of the danger in which he stood." Railroad Co. v. Cook, cited above. The overwhelming weight of authority is in accord with this rule, and no court has more clearly stated the principle than the supreme court of Kentucky. McDermott v. Railroad Co., 93 Ky. 408, 20 S. W. 380; Hoskins v. Railroad Co. (Ky.) 30 S. W. 643; Brown's Adm'r v. Railroad, Id. 639; Gherkins v. Railroad Co., Id. 651. If, therefore, the defendant in error was, on the indisputable evidence, a trespasser, the third request should have been given. This accident did not occur at a place where the track was crossed at grade by any public road or street. There was no such street nearer than three or four hundred feet. We may therefore leave out of consideration all questions which arise where a collision occurs at crossings of railroads and public highways. Cases of that class, as stated by the Massachusetts supreme judicial court, in Eaton v. Railroad Co., 129 Mass. 364, rest on the common-law rule "that, where there are different public easements to be enjoyed by two parties at the same time and in the same place, each must use his privilege with due care, so as not to injure the other."

Was the railroad company entitled to the exclusive use of its track at this place? The answer must depend upon the facts and circumstances in respect of the place where this accident occurred. The mere fact that this track was within the corporate limits of the town does not operate to deprive the company of its exclusive right of occupation and use. Neither is the fact that it crossed an open common of any significance in the determination of the legal right of the company to exclude all persons from its right of way. That it was unfenced is equally unimportant. That fact does not operate to deprive the company of its right to exclude trespassers. Each and all of these facts may make it the more difficult to prevent the public use of its track as a walkway, or prevent its being intersected by

paths traversed by wayfarers; and all these facts may have more or less significance in the determination of the question as to whether the public have so long and customarily enjoyed the privilege of crossing it at pleasure or using it as a footpath as to justify an inference that the company, by acquiescence, has consented to this sort of an easement. On the other hand the facts that the company had constructed a high and expensive embankment, that its track could therefore be crossed only by pedestrians, and that it maintained a warning against trespassers, are significant, as tending to show that it purposed to maintain the exclusive use. It is undoubtedly true that a license or permission to cross a railway track, or to use it as a convenient walkway, may be much more easily presumed when the track passes through a city or town or thickly-settled neighborhood than in the open country. Still, the evidence in each case must be such as to establish a long, continuous, and habitual use by the general public before either court or jury would be authorized to presume an invitation or imply a license in favor of the public. There has been much diversity of opinion as to the evidence necessary to establish a permissive easement of crossing by mere user. The Massachusetts cases have very consistently maintained that nothing short of evidence of an invitation will give to persons using a railway track for their own convenience any right of action for an injury sustained, not the result of intention or reckless indifference to the situation after the presence and danger of the person using the crossing was actually discovered. Sweeny v. Railroad Co., 10 Allen, 368; Johnson v. Railroad Co., 125 Mass. 75; Wright v. Railroad Co., 142 Mass. 296, 7 N. E. 866. So there are many cases which seem to recognize no distinction whatever between the liability to implied licensees upon the premises of a railroad company at places where the company is legally entitled to the exclusive occupation and those who go upon the premises as mere naked trespassers. In both cases the company has been held to come under no duty or obligation towards such persons until their danger is apparent. Of this class of cases the following may be cited as types: Railway Co. v. Tartt, 12 C. C. A. 618, 64 Fed. 823; Railroad Co. v. Godfrey, 71 Ill. 500; Morrissey v. Railroad Co., 126 Mass. 377; Railroad Co. v. Brinson, 70 Ga. 240; Baltimore & O. R. Co. v. State, 62 Md. 479; Kay v. Railroad Co., 65 Pa. St. 275; Richards v. Railroad Co., 81 Iowa, 426, 47 N. W. 63; Railroad Co. v. Womack, 84 Ala. 149, 4 South. 618. These cases seem to rest upon the doctrine of the English cases touching the liability of the owner of premises to those whom he suffers or permits to go upon or across his premises, and who sustain an injury by reason of the unfit or unsafe condition of the premises for the purposes to which such naked licensees had at them. In all such cases the rule seems to be that, by merely suffering or permitting such voluntary use, the owner of the premises comes under no obligation that his premises are either fit, safe, or suitable, or that they will remain so. Such a naked licensee accepts the privilege subject to all risks growing out of the condition of the premises. Bolch v. Smith, 7 Hurl. & N. 736; Corby v. Hill, 4 C. B. (N. S.) 556; Binks v. Railway Co., 3 Best & S. 244; Holmes v.

Railway Co., L. R. 4 Exch. 254. Still, if such an owner or occupier of premises invite, entice, allure, or induce persons to come upon his premises, though for their own convenience, he, by such active conduct, comes under an implied obligation that the premises are reasonably fit and safe for the purposes of such licensees.

In Corby v. Hill, cited above, the action was for an injury to the plaintiff while traveling upon a private way leading from a turnpike road to a private asylum, and over which parties having occasion to visit that place were likely to go, and were accustomed to pass, by permission of the owners of the soil. The defendant negligently obstructed this way, and took no steps to warn persons using it. The plaintiff's horse was driven against this obstacle, and injured. It was insisted by the defendant that the owner of the premises, and any one else with his permission, had a right to obstruct such a private way, and would not be liable to one who had not been allured or induced to use the way. To this, Cockburn, C. J., said:

"It seems to me that the very case from which the learned counsel seeks to distinguish this is the case now before us. The proprietors of the soil held out an allurement whereby the plaintiff was induced to come upon the place in question. They held out this road to all persons having occasion to proceed to the asylum as the means of access thereto. Having, so to speak, dedicated the way to such of the general public as might have occasion to use it for that purpose, and having held it out as a safe and convenient mode of access to the establishment, without any reservation, it was not competent for them to place thereon any obstruction calculated to render the road unsafe, and likely to cause injury to those persons to whom they held it out as a way along which they might safely go. If that be so, a third person could not acquire the right to do so under their license or permission."

Williams, J., in the same case, said:

"I see no reason why the plaintiff should not have a remedy against such a wrongdoer, just as much as if the obstruction had taken place upon a public road. Good sense and justice require that he should have a remedy, and there is no authority against it."

In Bennett v. Railroad Co., 102 U. S. 577–580, it was ruled that:

"Where the owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons, they using due care, for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him, and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation."

Mr. Justice Harlan supports the conclusions of the court largely upon Corby v. Hill, which we have heretofore cited.

It seems to us that many of the American cases which we have cited fail to draw the proper distinction between the liability of an owner of premises to persons who sustain injuries as a result of the mere condition of the premises and those who come to harm by reason of subsequent conduct of the licensor, inconsistent with the safety of persons permitted to go upon his premises, and whom he was bound to anticipate might avail themselves of his license. This distinction seems to be sharply emphasized in the case of Corby v. Hill, and is a distinction which should not be overlooked. If there be any substantial difference between the legal conse-

quence of permitting another to use one's premises and inviting or inducing such use, the distinction lies in the difference between active and the merely passive conduct of such a proprietor. It may be entirely consistent with sound morals and proper regard for the rights of others that the owner of premises should not be held liable to one who goes upon another's premises for his own uses, and sustains some injury by reason of the unfitness of the premises for such uses, not subsequently brought about by the active interference of the owner. If such person goes there by mere sufferance or naked license, it would seem reasonable that he should pick his way, and accept the grace, subject to the risks which pertain to the situation. But, on the other hand, if, with knowledge that such person will avail himself of the license, the owner actively change the situation by digging a pitfall, or opening a ditch, or obstructing dangerously the premises which he has reason to believe will be traversed by his licensee, sound morals would seem to demand that he should give reasonable warning of the danger to be encountered. This distinction seems to be more marked in cases where the evidence establishes in the public a permission or license to cross a railway at a given place or locality. If the company has so long acquiesced in the continuous and open use of a particular place as a crossing as to justify the inference that it acquiesces in that use, it would seem to follow that it was bound to anticipate the presence of such licensees upon its track at the place where such crossing had been long permitted. In such a case it would not be consistent with due regard to human life, and to the rights of others, to say that such licensees are mere trespassers, or that the duty of the acquiescing company was no greater than if they were mere trespassers. Nonliability to trespassers is predicated upon the right of the company to a clear track, upon which it is not bound to anticipate the presence of trespassers. It therefore comes under no duty to a trespasser until his presence and danger are observed. But if it has permitted the public for a long period of time to habitually and openly cross its track at a particular place, or use the track as a pathway between particular localities, it cannot say that it was not bound to anticipate the presence of such persons on its track, and was therefore not under obligation to operate its trains with any regard to the safety of those there by its license. This distinction between liability for the passive and active negligence of the owner of premises to licensees is recognized very clearly by the court of appeals of New York. Barry v. Railroad Co., 92 N. Y. 290; Byrne v. Railroad Co., 104 N. Y. 363, 10 N. E. 539. In Barry v. Railroad Co., cited above, the plaintiff had been run over by a train, of whose approach no warning was given, while crossing a railway at a place which the people of the vicinity had openly and continuously used as a crossway for some 30 years. The court said (Justice Andrews delivering the opinion) that, under such facts, "the acquiescence of the defendant for so long a time in the crossing of the tracks by pedestrians amounted to a license and permission by the defendant to all persons to cross the track at

this point." "These circumstances," said the court, "imposed a duty upon the defendant, in respect of persons using the crossing, to exercise reasonable care in the movement of its trains. The company had a lawful right to use the tracks for its business, and could have withdrawn its permission to the public to use its premises as a public way, assuming that no public right then existed; but, so long as it permitted the public use, it was chargeable with knowledge of the danger to human life from operating its trains at that point, and was bound to use such reasonable precaution in their management as ordinary prudence dictated to protect wayfarers from injury." The English cases we have cited above, as well as the cases of Nicholson v. Railway Co., 41 N. Y. 525, and of Sutton v. Railroad Co., 66 N. Y. 243, were distinguished upon the ground that they presented cases where the injury complained of resulted from no proximate affirmative act of the licensor by which the condition of the premises had been changed. The reasoning of these New York cases seems unanswerable, and accords with the natural justice incident to such a situation. That such a licensee is himself under the highest obligation to look out for his own safety, and that he cannot recover if his own want of due care proximately contributes to his misfortune, cuts no figure in the determination of the question now under consideration. The rule we deduce from the cases best reasoned and most consistent with sound public policy is this: If the evidence shows that the public had for a long period of time, customarily and constantly, openly and notoriously, crossed a railway track at a place not a public highway, with the knowledge and acquiescence of the company, a license or permission by the company to all persons to cross the track at that point may be presumed. Barry v. Railroad Co., 92 N. Y. 289; Byrne v. Railroad Co., 104 N. Y. 362, 10 N. E. 539; Railroad Co. v. White, 84 Va. 498, 5 S. E. 573; Davis v. Railway Co., 58 Wis. 646, 17 N. W. 406; Hooker v. Railroad Co., 76 Wis. 542, 44 N. W. 1085; Troy v. Railroad Co., 99 N. C. 298, 6 S. E. 77; Railway Co. v. Phillips, 112 Ind. 59–67, 13 N. E. 132; Palmer v. Railroad Co., 112 Ind. 250–261, 14 N. E. 70; Hargreaves v. Deacon, 25 Mich. 1. Persons availing themselves of such an implied license would not be trespassers, and the railroad company would come under a duty in respect to such licensees to exercise reasonable care in the movement of its trains at points where it was bound to anticipate their presence. To establish such an implied license, it is essential that the use shall have been definite, long, open, and continuous. The mere fact that a railway track is frequently used as a walkway, or frequently crossed, and that no active steps were taken to stop them, would not justify the presumption of a license. The cases we have cited in support of the rule stated abundantly support this limitation. The practice of crossing a railway track at random, or walking upon it, should not be encouraged; and when one injured seeks to show that he was not a trespasser, and relies upon an implied license, he should be required to make out the license clearly. If the question be the right to walk upon a trestle or a railway bridge, a much

higher degree of evidence should be required than when the place was less dangerous, and the implication of consent more probable. Mason v. Railroad Co., 27 Kan. 88; Anderson v. Railroad Co., 87 Wis. 195–205, 58 N. W. 79. On the other hand, where a track is laid down upon a public street, the public would seem to have an equal easement therein, and the company held to the same rule of liability as at a street crossing. Smedis v. Railroad Co., 88 N. Y. 13.

If, under the principles we have endeavored to announce, the railway company was entitled to the exclusive use of this track, then the defendant in error was a trespasser, and the company owed him no duty until his danger was discovered. If he was a trespasser, the fact that he was of immature years imposed no higher duty on the company, until his danger was discovered, than if he had been an adult. The railway company was no more required to keep a lookout for infants than for adult trespassers. Morrissey v. Railroad Co., 126 Mass. 377; Moore v. Railroad Co., 99 Pa. St. 301; Cauley v. Railroad Co., 95 Pa. St. 398; Wright v. Railroad Co., 142 Mass. 296, 7 N. E. 866; Hargreaves v. Deacon, 25 Mich. 1.

Whatever the proper legal effect of the city ordinance given in evidence in case the defendant in error was rightfully using this track for his own purposes, it is clear that it can have no conclusive effect if he went upon the track between street crossings, and at a point where the company has the exclusive right to the use of its track. In the latter case he was a trespasser, and no active diligence was due to him as a trespasser until his danger was discovered. The city ordinance did not, and could not, make his presence on the track rightful at a place other than one where the rights of the railway and the public were mutual, or where the circumstances were such as to imply a license to use the track by wayfarers. If he was a trespasser, the railway company owed him no duty, except that of avoiding his injury if his danger was discovered in time to do so. The evidence touching the customary and continuous use by the public of this embankment as a crossing place was exceedingly meager, and we are not prepared to say that, on the testimony in this record, the court would not have been justified in assuming the defendant in error to have been a trespasser, and charging the jury upon that theory exclusively. In view, however, of the possibility that but slight attention was given to this branch of the case, and of the fact that a new trial must be granted, we express no opinion upon the weight of the proof, nor the allied questions raised by the refusal of the court to instruct for the plaintiff in error, or to give the charge requested based upon the assumption that the defendant in error was a trespasser.

Reversed, and remanded for a new trial.