## HASTING v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Fourth Circuit. February 6, 1906.)

### No. 620.

1. RAILROADS—INJURY OF PERSON BY MOVING TRAIN—STATUTE RELATING TO CROSSINGS.

Civ. Code S. C. 1902, §§ 2132, 2139, prescribing the duties and liabilities of railroad companies in running trains over highway crossings, as construed by the Supreme Court of the state, can be invoked in an action

to recover for a personal injury only where the injury occurred at a crossing and by reason of a collision with a train.

2. SAME—ACTION FOR INJURY TO TRESPASSER—ACTIONABLE NEGLIGENCE.

Plaintiff's intestate, a boy eight years old, finding a highway crossing obstructed by cars of defendant railroad company, walked to the station platform, 40 or 50 feet from the crossing, and stepped from it to the platform of a car standing on a side track, and while thereon the car was struck or moved by an engine engaged in shifting cars on the side track, and he was thrown under the moving cars and killed. His presence on the station platform or car was not known to any of defendant's employés. *Held*, that he was a trespasser, to whom defendant owed no duty, except that of not willfully, wantonly, or intentionally injuring him; and that the direction of a verdict for defendant, on the ground that no negligence rendering it liable for the death was shown, was justified.

[Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, §§ 1238, 1239, 1367.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

Jos. A. McCollough, for plaintiff in error.

C. P. Saunders, for defendant in error.

Before PRITCHARD, Circuit Judge, and PURNELL and KELLER, District Judges.

PURNELL, District Judge. Paul Hasting, an infant, son of the plaintiff, eight years old, was killed at Welford, S. C., a station on the line of the defendant's road, by being thrown from the platform of a shanty or caboose car and run over in the yard of the defendant while the defendant was engaged in shifting and coupling cars.

The complaint alleges that the deceased was going from his home to an orchard of his father's, and in order to do so it was necessary for him to cross the track of the defendant where the public highway or street intersects the same. When he arrived at this point he found the highway blocked with cars, and it so remained for an unreasonable and unlawful length of time, and the deceased being induced by the conduct of the defendant company, or its agent, attempted to cross from the platform of the station to the platform of the shanty car, and, while he was so doing, the defendant, in a careless and negligent manner, backed its engine against a line of cars connected with the said shanty car with such force as to throw the deceased from the platform to the track and under the wheels of a car, and the negligence of the defendant consisted in the unlawful blocking of the public highway with its cars, and the failure of the company to furnish a lookout to warn persons attempting to cross the track at this station, and the failure to ring the bell or sound the whistle or to give any warning before moving the cars.

The following facts appear by the testimony: On the day alleged, the defendant was engaged in shifting cars at Welford, S. C., with an engine of one of its freight trains. In doing this it was necessary for it to move the engine from the main line to the side track, on which several freight cars, including the shanty car, were standing. In going back into the side track, and in undertaking to couple

cars there, it shoved some of the cars back, striking and moving the shanty car on the platform of which the deceased was standing. In shifting from main line to side track the noise made by the engine was heard by persons at some distance from the track. In moving these cars it used due care, coupling them in the ordinary and usual way. Deceased left the street in the town of Welford, walked down to the depot of the defendant, finding the cars across the street, and, without waiting for them to move, at once left the street or highway and entered upon the depot platform of the defendant, and at a point 40 or 50 feet away from the highway undertook to cross over by stepping from the depot platform to the shanty car. While he was on the platform of the depot going towards the shanty car, the engine which was doing the shifting was in sight and hearing of the deceased and others. Just before, and as he was about to step from the platform to the shanty car, a negro standing on the platform warned him and told him not to do so, telling him to come back. The deceased, instead of heeding the warning, made a mouth at the negro, left the depot platform, and entered on the shanty car. Immediately after he had done so, the engine, in coupling the cars, shoved or moved this shanty car, and the deceased, who was standing on its platform, fell off, and the wheels of the car ran over him, inflicting injuries from which he died.

The testimony also shows that none of the employés of defendant had any knowledge that the deceased was on or about the depot or cars. There is no allegation of willfulness and wantonness or of the earning capacity of deceased, nor was there any testimony introduced tending to show such facts. His honor, the presiding judge, directed a verdict for the defendant, from the judgment based thereon plaintiff appealed.

There was no error in the trial judge directing a verdict, if, after the testimony, the court was, as stated in the record, "of the opinion that there is no sufficient proof of negligence to sustain a verdict and it [the court] would set aside any verdict that is rendered." The courts of the United States have so often decided this question that it seems useless to cite authorities which were collated by this court in an appeal from the same district as the case at bar, at the last term of this court, in Turnbull v. Ross et al., 141 Fed. 649. It may be taken as settled law. Of course, the action of a trial judge in directing a verdict is subject to review, but error in so doing must be plainly pointed out. Appellate courts will not lightly set aside a verdict directed by a trial judge who has heard the whole case and thus expressed his deliberate opinion that either party is not entitled to a verdict. Many of the exceptions in the record appear to be based on a different view of the law as to the duties of a trial judge. This erroneous view of the law is expressed in nine paragraphs of the bill of exceptions, or nine exceptions.

The statement of the trial judge is not based on the question of contributory negligence, which is interjected into the briefs and argued at length. It is held by many of the courts, as cited in Pierce on R. R., 338, and note, that the negligence of parents in allowing

children of tender years to wander unattended upon a railroad is contributory negligence which will defeat an action by the parents. The same doctrine, in Manly v. Railroad, 74 N. C. 655, and other cases citing and affirming this decision, which is founded on good law, common sense and equity. But, as said, this does not seem to have entered into the reasons of the trial judge, who puts his action plainly and explicitly on the one ground "that there is not sufficient proof of negligence to sustain a verdict." It will be noted the facts proved do not measure up to the allegations of the complaint. There is a material difference in the allegations and facts proved. There is no controversy about the facts stated as proved or appearing by the testimony. Much is said in the briefs and the argument, in fact great stress is laid, on the fact that the highway or street was blocked, in violation of the town ordinance of Welford. The city or town ordinance was proved by parol testimony to have been passed and advertised, as was another ordinance prohibiting boys trespassing on the railroad yards and jumping on the cars—the last having been caused by the action of the Hasting boys and others; but neither ordinance is set out in the record, and hence cannot be considered. The South Carolina statute, too, in regard to sounding the whistle at crossings, is invoked; but the first part of this statute clearly applies to moving, not standing, trains, and is intended to give warning to people who are traveling the highway, not to boys eight years old who leave the highway, and after being warned persist in crossing the track on a shanty car some distance from the highway. Most of the statute has no application to the case at bar. The deceased was not traveling the highway, was not on the highway, but had left it and gone on the station property of defendant.

Was the deceased a trespasser? If he was, then the railroad company owed him no duty, except not to wantonly or willfully injure him. The accident, to be covered by the statute, must be at a crossing. This is the trend of decisions of the Supreme Court of South Carolina, construing this statute. Neely v. Railroad, 33 S. C. 136, 11 S. E. 636; Barber v. Railroad, 34 S. C. 444, 13 S. E. 630; Hankinson v. Railroad, 41 S. C. 1, 19 S. E. 206; Hutto v. Railroad, 61 S. C. 495, 39 S. E. 710; Sims v. Railroad, 59 S. C. 254, 37 S. E. 836. And a collision between the train and the traveler must have occurred. Kinard v. Railroad, 39 S. C. 514, 18 S. E. 119; Whilton v. Railroad (C. C.) 57 Fed. 551.

Was the boy a trespasser? He was not there for the purpose of transacting any business with, or at the invitation of, the defendant company, but solely for his own convenience. He had left the highway crossing and was some 50 feet therefrom, not on business, but for the purpose of crossing to go to an orchard, without the knowledge of, or at the instance of, the defendant.

In Cleveland, C., C. & St. L. Ry. Co. v. Tartt, 64 Fed. 831, 12 C. C. A. 618, the court, in considering the liability of a railway company for the death of a boy eight years and seven months old who was killed on the track of defendant, held the company was not liable, for the reason that the boy was a trespasser, and was old enough to be prima facie responsible for his trespasses, as well as chargeable

with contributory negligence for a failure to exercise ordinary care, having regard to his age and intelligence and the circumstances in which he was placed when killed. In Felton v. Aubrey, 74 Fed. 350, 20 C. C. A. 436, a boy nine years old was killed while crossing the track of the defendant's railroad within the corporate limits of a city, at a point where there was no street or highway crossing, and while in the private yard of the defendant company. Held the boy was a trespasser, and the defendant company owed him no duty except that of not willfully, wantonly, or intentionally injuring him. See, also, Railroad v. Bennett, 69 Fed. 525, 16 C. C. A. 300; Railroad v. Cook, 66 Fed. 115, 13 C. C. A. 364, 28 L. R. A. 181. In 3 Elliott on Railroads, §§ 1259, 1260, the liability of a railroad company to children trespassing on its track is fully discussed and numerous authorities cited, and the conclusion reached is: A railroad company owes to trespassing children no greater or higher duty than it owes to trespassing adults, unless there is something in the case which would tend to show that the company knew, or ought to have known, that the child was on or about its premises. This principle has been followed in South Carolina. In Darwin v. Railroad, 23 S. C. 531, 55 Am. Rep. 32, a boy, with the knowledge of the engineer, was on the pilot of the engine. There was a collision, and the boy was killed. Held that, as the boy had unlawfully intruded himself on the engine and cars of the defendant, he was a trespasser, and the only duty the company owed him was not to willfully, wantonly, or intentionally injure him. And in Burns v. Railway Co., 63 S. C. 46, 40 S. E. 1018, a boy, at the invitation of the engineer and conductor, went into the cab of a material train, and while the train was on a bridge so high from the ground that the boy could not get out, and when thus situated, a freight train ran into the cab and injured the boy. The complaint did not allege any willful, wanton, or intentional injury. A demurrer was interposed. The demurrer was sustained; the court holding that the boy was a trespasser, and that the defendant company was not liable, except for a willful, wanton, and intentional injury.

In the case at bar there is no allegation or proof tending to show willfulness or wantonness on the part of the defendant company.

It was contended that as there was evidence tending to show that the highway crossing was blocked for such an unreasonable time that the deceased had a right to leave the highway and cross at another point. Littlejohn v. Railway, 49 S. C. 12, 26 S. E. 967, is relied upon to sustain this contention. In that case the court does say that if a railway company obstructs a highway for an unreasonable length of time, or for a longer time than the law permits, unless it is without fault, the company thereupon becomes a trespasser, and if a person makes a reasonable use of its cars, without injury to them, at a crossing, for the sole purpose of crossing the railroad track, then the railroad company would be estopped from saying that he is a trespasser. The facts in the case, however, are not the facts in the case at bar. In that case Littlejohn undertook to climb over between the cars on the crossing, and the court, in discussing this question and in deciding the case, uses the expression:

"If a person makes a reasonable use of its cars, without injury to them, at a crossing, for the sole purpose of crossing the railroad track, the railroad company is estopped from saying that he is a trespasser."

The court seems to have considered as an important factor that Littlejohn remained on the highway, where he had a legal right to be, while in the case at bar the deceased had of his own motion left the highway and gone on the private property of the railroad company.

The statute law of the state, on which the plaintiff in error relies, is as follows (1 Code Laws S. C. 1902):

"Sec. 2132. A bell of at least thirty pounds weight and a steam whistle shall be placed on each locomotive engine, and such bell shall be rung, or such whistle sounded, by the engineer or fireman, at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place, and be kept ringing or whistling until the engine has crossed such highway or street, or traveled place; and if such engine or cars shall be at a standstill, within a less distance than one hundred rods of such crossing, such bell shall be rung, or whistle sounded, for at least thirty seconds before such engine shall be moved; and shall be kept ringing or sounding until such engine shall have crossed such public highway or street or traveled place."

"Section 2139. If a person is injured in his person or property by collision with the engines or cars of a railroad corporation at a crossing, and it appears that the corporation neglected to give the signals required by this chapter, and that such neglect contributed to the injury the corporation shall be liable for all damages caused by the collision, or to a fine recoverable by indictment, as provided in the preceding section, unless it is shown that, in addition to a mere want of ordinary care, the person injured, or the person having charge of his person or property, was, at the time of the collision, guilty of gross or willful negligence, or was acting in violation of the law; and that such gross or willful negligence or unlawful act contribute to the injury."

The accident did not happen on a street or highway crossing or other traveled place where the deceased had a right to be, neither was there a collision between the deceased and the train of the defendant company. The statute therefore does not apply. The object and purpose of the statute is to prevent a collision between a person on the crossing and the cars or engines of the railroad company. It has no reference to a trespasser and applies stricti juris to crossings. Under the facts as proved, there was no sufficient proof of negligence on the part of defendant to entitle plaintiff in error to a verdict for damages. There is no merit in the other exceptions to the rulings of the court as to the exclusion of testimony, which could in no way affect the case if admitted. Those exceptions raise questions which might have influenced or affected the prejudice of a jury, but on the merits of the case are without weight.

The Circuit Court is therefore affirmed.